**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Hamett DIAZ, Appellant**

**No. 3165 EDA 2015**

Superior Court of Pennsylvania.

Argued August 31, 2016
FILED DECEMBER 16, 2016

Paul P. Ackourey, Tunkhannock, for appellant.

Michael T. Rakaczewski, Assistant District Attorney, Stroudsburg, for Commonwealth, appellee.

BEFORE: BOWES, J., OTT, J., and SOLANO, J.

OPINION BY OTT, J.:

Hamett Diaz appeals from the judgment of sentence imposed on May 28, 2015, in the Monroe County Court of Common Pleas. The trial court sentenced Diaz to an aggregate term of 12 to 24 years' imprisonment following his jury conviction of rape of an unconscious person,[1] corruption of minors,[2] and related charges for the sexual assault of his stepdaughter's 17-year-old friend. On appeal, Diaz challenges both the sufficiency and weight of the evidence supporting his convictions, as well as the trial court's imposition of a mandatory minimum sentence.[3] Because we conclude the trial court erred in determining Diaz had committed a prior crime of violence justifying the imposition of his mandatory minimum sentence, we vacate the judg-

---

1. 18 Pa.C.S. § 3121(a)(3).

2. 18 Pa.C.S. § 6301(a)(1)(ii).

3. *See* 42 Pa.C.S. § 9714(a)(1). We have reordered Diaz's issues for purposes of disposition.

ment of sentence in part and remand for resentencing. In all other respects, we affirm the convictions.

The facts underlying Diaz's conviction are aptly summarized by the trial court as follows:

[Diaz] is the stepfather of K.C., a 15 year old female. K.C. has a 17 year old friend, K.O., who is the victim (hereinafter referred to as "Victim" . . .). On October 19, 201[3], at around 12:00 p.m., [Diaz] drove K.C. and Victim from Blakeslee, Monroe County, Pennsylvania to New York City, NY, so that K.C. and Victim could get their nails done. During the drive, [Diaz] furnished K.C. and Victim with alcohol. [Diaz] also drank alcohol. While in New York when K.C. was getting her nails done, [Diaz] and Victim went to a liquor store in order to purchase more alcohol.

After K.C. and Victim were finished with their nails, [Diaz], K.C., and Victim headed back to Pennsylvania. Upon returning to Pennsylvania, they stopped at a Burger King restaurant for Victim to use the bathroom. Victim was so intoxicated, she required assistance walking to and using the bathroom. Around 11:00 p.m., [Diaz], K.C. and Victim arrived back at [Diaz] and K.C.'s home in Blakeslee. When they arrived at the home, [Diaz] sent K.C. into the house to see if K.C.'s mother, [Diaz's] wife, was awake.

After K.C. went into the house, [Diaz] drove off with the Victim to a secluded service road. At this point, Victim began zoning in and out. After pulling onto the service road, Victim recalls [Diaz] getting out of the minivan, opening the trunk door, [and] laying out the backseat. [Diaz] then called Victim to move to the back of the minivan. When Victim moved to the back of the minivan she hit her head. The next thing Victim recalls she was lying on her back in the rear of the minivan. Victim then remembers [Diaz] putting his mouth on her vagina. Victim recalls [Diaz] putting his penis in her vagina. She testified that she was in and out of consciousness and that she was so intoxicated she was slurring her words and unable to speak.

[Diaz] and Victim arrived back at [Diaz] and K.C.'s house and she was unable to walk. [Victim] stated she "crawled" up the stairs. When Victim entered the house, she was crying and she immediately told K.C. that she and [Diaz] had driven down the mountain and she believed "something may have happened." K.C. then helped Victim wash up, get changed, and get into bed.

Victim later woke up around 4:00 a.m. on October 20, 2014, and told K.C. that she thought [Diaz] had sex with her. K.C. confirmed that Victim had come back to the house crying. Victim then called her ex-boyfriend about the incident. Victim's ex-boyfriend told his mother; the ex-boyfriend's mother called Victim's mother who called the police. Victim's mother then drove to [Diaz's] house and waited with Victim until the police arrived. The police arrived with an ambulance and Victim was transported to the hospital.

Trial Court Opinion, 10/2/2015, at 1–3.

Diaz was subsequently arrested and charged with numerous sexual offenses based on his assault of the victim, both while she was intoxicated and without her consent. On February 12, 2015, a jury returned a verdict of guilty on the charges of rape (unconscious person), unlawful contact with minor, sexual assault, aggravated indecent assault (without consent), indecent assault (without consent and unconscious person), corruption of minors (two counts), furnishing liquor to minors (two counts) and endangering the welfare of a

child.[4] The jury found Diaz not guilty of involuntary deviate sexual intercourse.[5]

On February 13, 2015, the Commonwealth provided Diaz with notice of its intent to seek a 25–year mandatory minimum sentence pursuant to 42 Pa.C.S. § 9714(a)(2) on the rape conviction.[6] Specifically, the Commonwealth averred Diaz had been convicted of two prior crimes of violence: (1) a 1998 New York conviction for attempted robbery 3rd degree; and (2) a 2001 federal conviction for conspiracy to commit robbery and use of a firearm. *See* Notice of Mandatory Sentencing Pursuant to 42 Pa.C.S. § 9714, 2/13/2015, at ¶¶ 7–8. At the May 28, 2015, sentencing hearing, the trial court found the Commonwealth failed to establish Diaz's New York conviction constituted an equivalent crime of violence under Section 9714. *See* N.T., 5/28/2015, at 20. Nevertheless, the court concluded that Diaz's federal conviction was an equivalent prior crime of violence, and, pursuant to Section 9714(a)(1), sentenced him to a mandatory minimum term of 10 to 20 years' imprisonment for the charge of rape. In addition, the trial court imposed two consecutive terms of one to two years' imprisonment for the charges of corruption of minors, and concurrent terms of eight to 16 years' imprisonment and 18 to 36 months' imprisonment for the charges of unlawful contact with minor and endangering the welfare of a child, respectively. The court found the remainder of

Diaz's convictions merged for sentencing purposes.

On June 4, 2015, Diaz filed a timely post-sentence motion seeking reconsideration of his sentence, and challenging the weight and sufficiency of the evidence supporting the jury's verdict. The trial court entered an order on October 2, 2015, denying Diaz's motion, and this timely appeal follows.[7]

■ Diaz first argues the evidence was insufficient to support his conviction of the sexual offenses. Specifically, he argues the Commonwealth failed to prove the victim was either "unconscious or unaware that sexual activity was occurring." Diaz's Brief at 27.

■ Our review of a challenge to the sufficiency of the evidence is guided by the following:

There is sufficient evidence to sustain a conviction when the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to enable the fact-finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden "by means of wholly circumstantial evidence." Further, we note that the entire trial record is evalu-

---

4. *See* 18 Pa.C.S. §§ 3121(a)(3); 6318(a)(1); 3124.1; 3125(a)(1); 3126(a)(1) and (a)(4); 6301(a)(1)(i) and (ii) (related to sexual offenses); 6310.1(a) and 4304(a)(1), respectively.

5. *See* 18 Pa.C.S. 3123(a)(3).

6. Section 9714(a)(2) provides for a 25–year mandatory minimum sentence if a defendant convicted of a crime of violence had "previously been convicted of two or more such crimes of violence arising from separate criminal transactions." 42 Pa.C.S. § 9714(a)(2).

Relevant to this appeal, subsection (a)(1) of the statute provides for a 10–year mandatory minimum if the defendant had previously been convicted of one crime of violence. *See* 42 Pa.C.S. § 9714(a)(1).

7. On October 16, 2015, the trial court ordered Diaz to file a concise statement of errors complained of on appeal pursuant to Pa. R.A.P. 1925(b). Diaz complied with the court's directive, and filed a concise statement on November 5, 2015.

ated and all evidence received against the defendant is considered, being cognizant that the trier of fact is free to believe all, part, or none of the evidence. *Commonwealth v. Martin*, 627 Pa. 623, 101 A.3d 706, 718 (2014) (internal citation omitted), *cert. denied,* —— U.S. ——, 136 S.Ct. 201, 193 L.Ed.2d 155 (2015).

Here, Diaz challenges only the victim's state of consciousness during the alleged sexual assault.[8] *See* Diaz's Brief at 27. Under the charges of rape and indecent assault, Diaz was convicted of engaging in sexual activity with the victim while she was "unconscious" or "unaware" that the sexual contact was occurring. *See* 18 Pa. C.S. §§ 3121(a)(3) (rape) and 3126(a)(4) (indecent assault). Similarly, for the charges of sexual assault and aggravated indecent assault, he was convicted of engaging in sexual contact with the victim without her consent,[9] which, according to Diaz, the Commonwealth established by the victim's unconscious state. *See* Diaz's Brief at 27. Diaz argues the evidence was insufficient to demonstrate the victim was unconscious at the time of the sexual assault because her testimony established she was "very much aware not only of her surroundings, but was cognizant of the acts being perpetrated upon her." *Id.* at 28. He maintains "[w]hile the evidence may have established that the complaining witness was inebriated, inebriation is not the equivalent of unconsciousness." *Id.* at 28–29, *citing Commonwealth v. Erney*, 548 Pa. 467, 698 A.2d 56, 60 (1997) (Nigro J. dissenting).

Diaz's reliance on the dissenting opinion in *Erney, supra,* is telling, as the facts in that case are almost identical to those presented here. In *Erney*, the defendant provided the 15-year-old victim with alcohol and marijuana. *Erney, supra,* 698 A.2d at 57–58. When the victim was "so intoxicated as to be unable to move or speak," the defendant sexually assaulted her. *Id.* at 58. The next day, the victim was "uncertain as to whether the assault had actually occurred" until she confirmed it with a friend who had witnessed the assault. *Id.* Similar to the present case, the defendant was convicted of rape of an unconscious person under Section 3121(a)(3). On appeal, the defendant argued:

> [H]e should be discharged because the victim had some sense of awareness of what was occurring during the assault, as evidenced by her recollection that [the defendant] had touched her and had penetrated her vagina with his penis, and thus that the victim was not "unconscious" within the meaning of the statute.

*Id.*

The Pennsylvania Supreme Court rejected the defendant's claim that the statute "protects only those individuals who were completely unaware of the event throughout the duration of the sexual assault upon them." *Id.* at 59. Rather, the Court found both the plain meaning of the word "unconscious" and the legislative intent of the statute encompassed an intoxicated victim. The *Erney* Court opined:

> Webster's New World Dictionary, Second College Edition, defines "unconscious" as "not endowed with consciousness." "Consciousness", in turn, is defined as "the state of being conscious; awareness of one's own feelings, what is happening around one, etc." The term "conscious" includes "having a feeling or knowledge (of one's own sensations, feelings, etc. or of external things); knowing or feeling

---

**8.** Diaz does not contend that he did not engage in sexual contact with the victim.

**9.** *See* 18 Pa.C.S. §§ 3124.1 and 3125(a)(1).

(that something is or was happening or existing); aware; cognizant ... [;] able to feel and think; in the normal waking state...."".

Here, viewing the evidence in the light most favorable to the Commonwealth, [the victim], at times during the assault, was unconscious. When the assault began, she displayed no awareness of external events. As the crime progressed, she believed that she was shouting for [the defendant] to stop, but was completely unable to perceive how she was communicating—*i.e.*, that she was merely mumbling. ... Her complete lack of awareness of the duration of the assault further indicates that she was not conscious throughout its entirety. Thus, despite her ability to perceive some aspects of the incident, her lack of knowledge of much of what occurred supports the finding that she was unconscious during portions of the assault and was, therefore, unable to consent to sexual intercourse. Because there was ample evidence from which the jury could properly find that the victim, during at least portions of the assault, lacked knowledge or awareness of both her own sensations and external events, and was not in the normal waking state, the evidence was sufficient to support the finding that she was unconscious within the meaning of the statute.

Because the evidence supports the findings that the victim was intermittently unconscious throughout the assault[4] and was at all relevant times in such impaired physical and mental condition so as to be unable to knowingly consent, her submission to intercourse was involuntary. That intercourse, therefore, is sufficient to constitute rape of an unconscious individual. This conclusion is consistent with the obvious legislative intent behind the statute: to punish sexual intercourse performed upon an individual physically or mentally incapable of consent. To conclude otherwise would mean that 18 Pa.C.S. § 3121(3) does not proscribe intercourse with a person physically and mentally incapable of consent merely because that person, at certain times during the assault but not at others, was able to perceive to some degree what was occurring. Such a result is neither warranted by the plain language of the statute, nor consistent with legislative intent to protect a victim from sexual assault in such situations.

    [4] Having heard the victim's testimony, the trial court noted that "one has the sense from her testimony that she was sort of drifting in and out somewhat."

*Id.* (internal citations omitted).[10]

The facts in the present case are virtually identical to those in *Erney*. Here, the victim testified she was so intoxicated that she was "blacking in and out." N.T., 2/11/2015, at 44. While she remembered some of the events preceding the assault, she did not recall how she ended up on her back in the minivan. *Id.* at 45. The victim stated she became aware Diaz was taking her pants off, but she "couldn't speak." *Id.* She also recalled blacking out after he performed oral sex on her, and when she "came back into it, [she] realized he was between [her] legs." *Id.* at 46. At that

---

**10.** We note Justice Nigro filed a Dissenting Opinion, joined by Justice Zappala, in which he concluded "[t]he victim's ability to recount details of this episode in her testimony demonstrates that she was not 'unconscious'." *Erney, supra,* 698 A.2d at 60. Justice Nigro found "there is a distinction between one who is inebriated and one who is unconscious[ and the i]nability to consent to sexual intercourse because of intoxication is not rape within the language of Pennsylvania's rape statute." *Id.* Diaz's argument is premised upon this non-precedential Dissenting Opinion.

point, the victim testified her body felt "paralyzed, ... like ... dead weight," and she tried to close her legs but they "felt so heavy." *Id.* at 46, 47. After Diaz finished the assault, and took her back to his house, the victim stated she had trouble walking, and had to "climb[ ] up the stairs" on her hands and knees. *Id.* at 49–50. Based on the above testimony, the evidence supports the conclusion that the victim here, like in *Erney*, "was intermittently unconscious throughout the assault and was at all relevant times in such impaired physical and mental condition so as to be unable to knowingly consent [such that] her submission to intercourse was involuntary." *Erney, supra*, 698 A.2d at 59. Therefore, we find the evidence was sufficient to establish Diaz sexually assaulted the victim while she was unconscious and without her consent.

■ Next, Diaz challenges the weight of the evidence,[11] asserting the victim's allegations are "uncorroborated by other physical evidence and ... inconsistent." Diaz's Brief at 29. Specifically Diaz points to the victim's testimony that when she woke up in K.C.'s room at 4:00 a.m., she stated to K.C. "that she was unsure as to whether sexual intercourse had occurred with [Diaz] or whether she was merely dreaming."[12] *Id., citing* N.T., 2/11/2015, at 76, 94–99.

■ When a defendant challenges the weight of the evidence, he "concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice." *Commonwealth v. Lyons*, 622 Pa. 91, 79 A.3d 1053, 1067 (2013), *cert. de-*

nied, —— U.S. ——, 134 S.Ct. 1792, 188 L.Ed.2d 761 (2014). Our review of a weight claim is well-established:

> The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of "a mere conflict in the testimony" and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock one's conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Rosser*, 135 A.3d 1077, 1090 (Pa. Super. 2016) (*en banc*), *quoting Commonwealth v. Gonzalez*, 109 A.3d 711, 723 (Pa. Super. 2015), *appeal denied*, 125 A.3d 1198 (Pa. 2015) (citations omitted).

We note that, in denying Diaz's post-sentence motion, the trial court did not specifically address the weight of the evidence challenge, but rather focused on the sufficiency claims, finding the victim's testimony was sufficient to establish she was

---

11. Diaz includes this issue as an "alternative" argument in his sufficiency claim. *See* Diaz's Brief at 29.

12. We note Diaz properly preserved his weight of the evidence claim in his post-sentence motion. *See* Pa.R.Crim.P. 607(A)(1).

unconscious or unaware that Diaz was sexually assaulting her. *See* Trial Court Opinion, 10/2/2015, at 14–18. Nevertheless, the fact the trial court denied Diaz's post-sentence motion, in which he challenged the weight of the evidence as an alternative to his sufficiency claim, substantiates an inference that the court did not believe the verdict "shock[ed] one's sense of justice." *Rosser, supra*, 135 A.3d at 1090. *See Commonwealth v. Upshur*, 764 A.2d 69, 73 (Pa. Super. 2000) (*en banc*) (holding weight claim, which trial court failed to address in opinion, was still reviewable on appeal because court's denial of post-sentence motion signified court's dismissal of claim), *appeal dismissed as improvidently granted*, 566 Pa. 589, 782 A.2d 538 (2001).

Diaz has failed to demonstrate the trial court abused its discretion in denying his weight of the evidence challenge. The victim described how she was so intoxicated at the time of the assault that she was "blacking in and out." N.T., 2/11/2015, at 17. She recalled Diaz calling her to the back of the minivan, but did not remember how she came to be lying on her back. *See id.* at 18. The victim testified that when she realized Diaz was assaulting her, she could not speak, and her body felt like "dead weight." *Id.* at 19–20. She stated that she told K.C. what had happened when they returned to the house. *See id.* at 24. However, the victim explained that when she woke up, she was unsure whether the assault had actually occurred or whether she had been dreaming because she was "still intoxicated." *Id.* at 49. She testified, "I asked [K.C.] to confirm because I tell [her] everything." *Id.* Furthermore, the lack of corroborating physical evidence does not undermine the victim's testimony, found to be credible by the jury, that Diaz sexually assaulted her while she was intoxicated. Indeed, "[t]his Court has long-recognized that the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, despite contrary evidence from defense witnesses." *Commonwealth v. Charlton*, 902 A.2d 554, 562 (Pa. Super. 2006) (citation and internal punctuation omitted), *appeal denied*, 590 Pa. 655, 911 A.2d 933 (2006). Because Diaz has failed to establish the trial court abused its discretion in denying his weight of the evidence claim, his second issue fails.

In his third claim, Diaz contends his mandatory minimum sentence is unconstitutional under *Alleyne v. United States*, — U.S. —, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). He maintains that, because his sentence was enhanced based upon a prior conviction of a crime of violence, proof of which was determined by the trial court at sentencing under a preponderance of the evidence standard, "the sentence imposed in the instant case is unconstitutional and therefore illegal" under *Alleyne*. Diaz's Brief at 26.

In *Alleyne*, the United States Supreme Court held "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Alleyne, supra*, 133 S.Ct. at 2155. In interpreting that decision, the courts of this Commonwealth have determined that most of our mandatory minimum sentencing statutes, which permit "the trial court, as opposed to the jury, to increase a defendant's minimum sentence based upon a preponderance of the evidence" standard, are unconstitutional. *Commonwealth v. Newman*, 99 A.3d 86, 98 (Pa. Super. 2014) (*en banc*), *appeal denied*, 121 A.3d 496 (Pa. 2015). Nevertheless, the *Alleyne* Court, like that of its predecessor *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), recognized a "narrow exception to this general rule for the fact of a prior conviction." *Alleyne, supra*,

133 S.Ct. at 2160 n.1. Accordingly, relying on that exception, this Court has held that Section 9714 is "not unconstitutional under *Alleyne*." *Commonwealth v. Reid*, 117 A.3d 777, 785 (Pa. Super. 2015).[13] Therefore, Diaz is entitled to no relief on this claim.

■ In his last issue, Diaz contends the trial court erred in imposing a 10–year mandatory minimum sentence under Section 9714 because the Commonwealth failed to demonstrate he had been convicted of a prior crime of violence as defined in the statute. We agree.[14]

Section 9714 provides, in relevant part: "Any person who is convicted ... of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement[.]" 42 Pa.C.S. § 9714(a)(1).[15]

Subsection (g) of the statute defines "crime of violence" as, *inter alia*, "robbery as defined in 18 Pa.C.S. § 3701(a)(1)(i), (ii) or (iii) (relating to robbery) ... or an equivalent crime in another jurisdiction." 42 Pa.C.S. § 9714(g).

In *Commonwealth v. Northrip*, 603 Pa. 544, 985 A.2d 734 (2009), the Pennsylvania Supreme Court considered what constitutes an equivalent crime under Section 9714.[16] In doing so, the Court adopted the rationale of its prior ruling, *Commonwealth v. Shaw*, 560 Pa. 296, 744 A.2d 739 (2000). In *Shaw*, the Court analyzed an enhanced sentencing provision under Pennsylvania's Driving Under the Influence ("DUI") statute which applied when a defendant had a previous conviction of DUI or an "equivalent offense ... in [an]other jurisdiction." *Northrip, supra*, 985 A.2d at 738 (citation omitted). The *Shaw* Court directed the trial court to "carefully

---

**13.** We note the Pennsylvania Supreme Court has granted allowance of appeal on this issue in three consolidated cases. *See Commonwealth v. Bragg*, 143 A.3d 890 [31 EAP 2016] (Pa. 2016); *Commonwealth v. Macklin*, 143 A.3d 890 [78 MAP 2016] (Pa. 2016); *Commonwealth v. Sachette*, 143 A.3d 890 [79 MAP 2016] (Pa. 2016). As of the filing of this Opinion, those cases are still in the briefing stage, and, therefore, the decision in *Reid* is controlling.

**14.** "The issue before us is one of statutory construction that implicates the legality of the sentence imposed. As a result, our standard of review is *de novo* and the scope of our review is plenary." *Commonwealth v. Northrip*, 603 Pa. 544, 985 A.2d 734, 736 (2009).

**15.** Section 9714(a)(2) provides for a 25–year mandatory minimum when the defendant had previously been convicted of "two or more such crimes of violence arising from separate criminal transactions[.]" 42 Pa.C.S. § 9714(a)(2). As noted above, the Commonwealth originally proceeded under subsection (a)(2), but the trial court found that Diaz's prior conviction of attempted robbery in New York did not constitute an equivalent crime of

violence under subsection 9714(g). *See* N.T., 5/28/2015, at 20.

**16.** The defendant in *Northrip* was convicted of, *inter alia*, involuntary deviate sexual intercourse, a "crime of violence" under Section 9714. *Northrip, supra*, 985 A.2d at 736. Because he had a prior conviction of arson in the third degree in New York, the Commonwealth requested the court impose a Section 9714 mandatory minimum. *Id.* The trial court agreed that Section 9714 was applicable because the New York conviction was an equivalent offense to Pennsylvania's arson statute. *Id.* The Superior Court reversed on appeal, concluding that the prior conviction was not "equivalent to the specific Pennsylvania arson provision listed in Section 9714." *Id. See* 42 Pa.C.S. § 9714(g) (including "arson endangering persons or aggravated arson as defined in 18 Pa.C.S. § 3301(a) or (a.1)" in definition of "crime of violence"). The Supreme Court agreed, concluding that while the laws "appear to have similar elements and burdens of proof," the New York statute at issue "focuses plainly on the protection of property" rather than the protections of persons. *Id.* at 741–742.

review the elements of the foreign offense in terms of classification of the conduct proscribed, its definition of the offense, and the requirements for culpability," and stated "[a]n equivalent offense is that which is substantially identical in nature and definition [to] the out-of-state or federal offense when compared [to the] Pennsylvania offense." *Id. quoting Shaw, supra*, 744 A.2d at 743.

The *Northrip* Court concluded the same test was applicable to Section 9714:

> In determining whether a foreign state's statute is equivalent to a Pennsylvania crime under Section 9714, we hold that the sentencing court is to apply the test this Court articulated in *Shaw*. Thus, the court must consider "the elements of the foreign offense in terms of classification of the conduct proscribed, its definition of the offense, and the requirements for culpability." *Shaw*, 744 A.2d at 743 (citation omitted). With respect to the underlying policy of the statutes, we hold that analysis of policy considerations is appropriate, though not controlling. *See Shaw*, 744 A.2d at 744–45 (noting the relevance of the statutes' policies but rejecting the Commonwealth's claim that the statutes were equivalent merely because they shared a policy of punishing impaired drivers).

*Id.* at 740. The *Northrip* Court also cautioned that the focus should be on "the [prior] crime for which the defendant was convicted, not the factual scenario underlying that crime." *Id.* at 741.

It is with this background in mind that we consider the statutes at issue herein.[17] Section 9714 includes robbery as a "crime of violence," but only robbery as defined in 18 Pa.C.S. § 3701(a)(1)(i), (ii), or (iii). *See* 42 Pa.C.S. § 9714(g). The Commonwealth agrees that, for our purposes, the relevant

subsection is (a)(1)(ii), which provides, "[a] person is guilty of robbery if, in the course of committing a theft, he ... threatens another with or intentionally puts him in fear of **immediate serious bodily injury**[.]" 18 Pa.C.S. § 3701(a)(1)(ii) (emphasis supplied). Accordingly, we must determine whether Diaz's federal conviction for interference with commerce by threats or violence is an equivalent crime of robbery under Section 3701(a)(1)(ii).

The federal offense, codified at 18 U.S.C. § 1951, is defined as follows:

> (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, **by robbery** or extortion or attempts or conspires so to do, **or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section** shall be fined under this title or imprisoned not more than twenty years, or both.

> (b) As used in this section—

>> (1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, **by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession,** or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(a), (b)(1) (emphasis supplied).

---

**17.** We note Diaz does not dispute his present conviction included a predicate "crime of violence" under Section 9714(g), namely, rape. *See* 42 Pa.C.S. § 9714(g).

Here, the trial court found the language of the two statutes "substantially similar and comparable to each other." Trial Court Opinion, 10/2/2015, at 10. The court explained "both statutes concern a robbery or unlawful taking," as well as a "concern over the use or threat of violence (force) or instilling fear of injury in another during a theft or robbery." *Id.* at 11, 12. It emphasized that a crucial element in both offenses is "a requirement that the defendant [ ] threaten to or place the victim in fear of violence or imminent serious bodily injury." *Id.* at 12. Although the court acknowledged the federal statute is broader in scope, because it contemplates a threat to property, the court opined:

> [W]e find that the nature of the threat is equivalent where the defendant placed a victim in fear of immediate serious bodily injury during a theft or unlawful taking. *Com. v. Jannett*, 58 A.3d 818, 822 (Pa. Super. 2012) (citation omitted). It is difficult for this Court to differentiate the threat of physical violence to any person, contained in the federal statute, from the threatening another with fear of serious bodily injury, contained in the Pennsylvania statute, as not being equivalent. Physical violence to any person would necessarily include threatening or placing another in fear of serious bodily injury. Accordingly, we find that the statutes are substantially identical in nature and definition.

*Id.* at 12.[18]

Diaz argues, however, the broader behavior proscribed in the federal statute is dispositive, since Section 3701(a)(1)(ii) specifically "requires proof that the defendant threatened another with or intentionally put him in fear of **imminent serious bodily injury.**" Diaz's Brief at 20 (emphasis supplied). We agree. The trial court focused on how the statutes **could be** equivalent given certain factual scenarios, rather than considering the language and intent of the statutes. The decision of this Court, sitting *en banc*, in **Commonwealth v. Greene**, 25 A.3d 359 (Pa. Super. 2011) (*en banc*), *aff'd*, 623 Pa. 23, 81 A.3d 829 (2013), is instructive.

In **Greene, supra,** the *en banc* panel applied the test outlined in **Northrip** to determine whether the defendant's prior convictions of unarmed robbery and simple assault to commit robbery in Massachusetts were substantially equivalent to the three sections of the robbery statute listed as "crimes of violence" in Section 9714(g). *See id.* at 361–362. In concluding the prior convictions were not equivalent crimes, the panel found "neither Massachusetts crime necessitates anything that resembles causing or threatening **serious bodily injury,** the crucial elements of the Pennsylvania robbery statute, for purposes of being a crime of violence." *Id.* at 362 (emphasis in original). Specifically, the *en banc* panel opined:

> A close inspection of the relevant statutes indicates that the Massachusetts statutes "cast a wider net" and cover a broader array of criminal behavior than do the Pennsylvania robbery sections that are considered crimes of violence. *Northrip, supra* at 739 [603 Pa. 544]. The Pennsylvania robbery provisions defined as crimes of violence are intended to protect against serious bodily injury or the threat of serious bodily injury. A

---

**18.** The trial court's citation to *Jannett, supra,* is perplexing because the *Jannett* panel did not undertake an analysis of the prior unstated crime of violence. Rather, it found the defendant's claims was simply "based on his belief that he should not have been convicted" of the predicate crime of violence. *See Jannett, supra,* 58 A.3d at 822. Because the panel had already determined that claim was meritless, it found the defendant's Section 9714 argument "necessarily also fail[ed]." *Id.*

cursory look at Massachusetts jurisprudence defining the elements of both crimes firmly establishes that neither statute requires a threat of serious bodily harm or a person to be put in fear of serious bodily harm. Rather, the relevant Massachusetts laws protect against less serious criminal behavior.

*Id.* at 364.

With regard to the offense of unarmed robbery, the panel noted the Massachusetts statute criminalizes when a person "not being armed with a dangerous weapon, by force and violence, or by assault and putting in fear, robs, steals or takes from the person of another, or from his immediate control, money or other property[.]" *Id.* at 362, *quoting* M.G.L.A. 265 § 19(b). The Massachusetts simple assault crime at issue provides: "Whoever, not being armed with a dangerous weapon, assaults another with force and violence and with intent to rob or steal shall be punished by imprisonment in the state prison for not more than ten years." *Id., quoting* M.G.L.A. 265 § 20. The *en banc* panel found that neither statute protected persons from the threat of or the causing of **serious bodily harm** as is required in the subsection of the Pennsylvania robbery statute at issue. *See id.* at 364, 366.

The *Greene* Court also distinguished this Court's prior decision in *Commonwealth v. Taylor*, 831 A.2d 661 (Pa. Super. 2003), upon which the Commonwealth relies upon in the present case. In *Taylor*, a panel of this Court found the defendant's prior federal conviction of armed bank robbery constituted a prior crime of violence under Section 9714(g). *Taylor, supra*, 831 A.2d at 666. In particular, the panel explained the defendant had entered a guilty plea to 18 U.S.C. § 2113(a), which, *inter alia*, prohibits a person from taking "by force and violence, or by intimidation" property or money from a bank. *Id.* at 665,

*quoting* 18 U.S.C. § 2113(a). Subsection (d) of the statute, which was also part of the defendant's plea, increases the sentence when the assailant "in committing or attempting to commit" the crime under subsection (a), "assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device[.]" *Id., quoting* 18 U.S.C. § 2113(d). The *Taylor* panel opined: "The conduct prohibited by both statutes, the resort to such force and intimidation to accomplish the individual's purpose of taking, is the same ... [and, consequently,] the crimes in question are equivalent within the meaning and purpose of 42 Pa.C.S.A. § 9714[.]" *Id.* at 666.

The *Greene* Court, however, found the decision in *Taylor* "readily distinguishable." *Greene, supra*, 25 A.3d at 365. The *en banc* panel opined:

> *Taylor* involved a federal armed robbery statute that provided "Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person **by the use of a dangerous weapon or device,** shall be fined under this title or imprisoned not more than twenty-five years, or both." *Taylor, supra* (citing 18 U.S.C. § 2113(d)) (emphasis added). It is well settled that the use of a weapon to threaten another will place a person in fear of serious bodily injury. Were the statute at issue herein the Massachusetts **armed robbery** provision, M.G.L.A. 265 § 17, there would be no dispute that the Massachusetts law was substantially similar to the Pennsylvania robbery statute.

*Id.* (emphasis added).

Similarly, here, we find Diaz's prior conviction of interference with commerce by threats or violence under Section 1951 is not an equivalent crime to robbery under

Section 3701(a)(1)(ii). The federal statute refers to the obstruction of the movement of property in commerce by, *inter alia*, the commission or threat of physical violence to any person **or property**. *See* 18 U.S.C. § 1951(a). It specifically criminalizes the unlawful taking of property from a person against his will "by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining." 18 U.S.C. § 1951(b)(1). Nowhere does the statute refer to the commission of, or threat of, "serious bodily injury" as required under the relevant subsection of the Pennsylvania robbery statute. *See* 18 Pa.C.S. § 3701(a)(1)(ii). The Crimes Code defines serious bodily injury as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. Significantly, Section 9714 does not include subsection (a)(1)(iv) of the robbery statute as a predicate crime of violence. That subsection requires only that the defendant "inflict[ ] bodily injury upon another or threaten[ ] another with or intentionally put[ ] him in fear of **immediate bodily injury**[.]" 18 Pa. C.S. § 3701(a)(1)(iv) (emphasis added).

Furthermore, the federal statute also criminalizes a threat to a person's property. Nothing in Section 9714 indicates the Legislature's willingness to find a threat to **property** as a "crime of violence." *See* 42 Pa.C.S. § 9714(g). The lack of a "serious bodily injury" requirement in the federal statute is dispositive. As our Court stated in *Greene*, the federal statute at issue herein " 'cast[s] a wider net' and cover[s] a broader array of criminal behavior than do the Pennsylvania robbery sections that are considered crimes of violence." *Greene, supra*, 25 A.3d at 364 (quotation omitted).

Nevertheless, the Commonwealth emphasizes that Diaz was also convicted of the federal crime, "use of a firearm during a robbery." Commonwealth's Brief at 8, *citing* 18 U.S.C. § 924(c)(1)(A). However, Section 924 of the United States Crimes Code is more a sentencing enhancement provision, rather than a crime. It provides, in relevant part:

> (c)(1)(A) ... [A]ny person who, during and in relation to any crime of violence ... for which the person may be prosecuted in a court of the United States, uses **or carries a firearm**, or who, **in furtherance of any such crime, possesses a firearm**, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—
>
> (i) be sentenced to a term of imprisonment of not less than 5 years[.]

18 U.S.C. § 924(c)(1)(A)(i) (emphasis added). The statute does not require the defendant to have brandished, or even displayed, the firearm while committing a "crime of violence." *Id.* Further, we note that neither Pennsylvania's possessing an instrument of crime statute, 18 Pa.C.S. § 907, nor any provisions of the Uniform Firearms Act, 18 Pa.C.S. § 6101 *et seq.*, qualify as "crimes of violence" under Section 9714(g). Therefore, we find Diaz's attendant conviction of 18 U.S.C. § 924(c)(1)(A), does not transform his conviction of interfering with commerce into an equivalent crime of violence under our mandatory sentencing statute. Accordingly, we conclude the trial court erred in imposing the Section 9714 mandatory minimum sentence on Diaz's conviction of rape. Because vacating only that 10–year mandatory minimum sentence may "disrupt the trial court's overall sentencing scheme," we vacate Diaz's judgment of

sentence in its entirety and remand for resentencing. *Commonwealth v. Hill*, 140 A.3d 713, 718 (Pa. Super. 2016).

Accordingly, we vacate the judgment of sentence and remand for resentencing without the imposition of a Section 9714 mandatory minimum sentence. In all other respects, we affirm.

Judgment of sentence vacated in part and affirmed in part. Case remanded for resentencing. Jurisdiction relinquished.