J-A22009-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| PAUL BROWN | |
| Appellant | No. 1147 EDA 2016 |

Appeal from the Judgment of Sentence March 14, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005729-2013

BEFORE:  BOWES, LAZARUS AND PLATT,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED FEBRUARY 12, 2018**

Paul Brown appeals from the judgment of sentence of seven to fourteen years incarceration imposed after he was convicted of unlawful contact with a minor ("unlawful contact"), corruption of a minor ("corruption"), and endangering the welfare of a child ("EWOC").  We affirm.

The following facts underlie this matter.  In March 2013, the victim, J.B.B., was three-years old. During that time, J.B.B. was regularly cared for by Appellant and his wife, J.B.B.'s maternal great-grandmother, while J.B.B.'s mother, Bianca Benjamin, went to work.  On March 13, 2013, J.B.B. stayed the night with Appellant and his great-grandmother.  The following evening, when Ms. Benjamin arrived to pick up J.B.B., the child stated that

_____
* Retired Senior Judge specially assigned to the Superior Court.

Appellant had "sucked [his] penis." N.T. Trial, 11/19/15, at 12. J.B.B. then pulled his pants down revealing that his penis was red and swollen. Ms. Benjamin took the victim to the hospital. A medical examination revealed that J.B.B.'s penis was red, swollen, and sensitive to the touch. Utilizing a sexual abuse testing kit, samples were taken from J.B.B.'s body, and his clothing was collected for further evaluation. Further testing revealed Appellant's DNA on J.B.B.'s sock, the crotch of his pants, and the crotch of his underwear.

Based on the foregoing, Appellant was arrested and charged with unlawful contact, corruption, EWOC, indecent assault on a person less than thirteen years of age, involuntary deviate sexual intercourse with a minor, and other related offenses. Appellant was first tried in October 2014, but after deliberation, the jury was hopelessly deadlocked, and the court declared a mistrial. In November 2015, Appellant was retried, and the jury convicted him of unlawful contact, corruption, and EWOC. Appellant was acquitted of involuntary deviate sexual intercourse with a minor, and the remaining charges were *nolle prossed*. Following a sentencing hearing, the trial court imposed an aggregate judgment of sentence of seven to fourteen years incarceration. Appellant did not file a post-sentence motion. However, on April 9, 2016, he filed a timely notice of appeal. Appellant complied with the trial court's order to file a Rule 1925(b) concise statement

of errors complained of on appeal, and the trial court authored its Rule 1925(a) opinion. This matter is now ready for our review.

Appellant raises two questions for our consideration:

A. Was the evidence insufficient as a matter of law to establish Appellant's guilt beyond a reasonable doubt on the charges of: 1) unlawful contact with a minor 18 § 6318 §§ A1 (1st Degree Felony); 2) corruption of minors 18 § 6301 § A1i (1st Degree Misdemeanor); and 3) endangering welfare of children 18 § 4304 §§ A1 (1st Degree Misdemeanor)?

B. Whether a new trial should be awarded in the interests of justice because they jury verdict was against the weight of the evidence on the charges of 1) unlawful contact with a minor 18 § 6318 §§ A1 (1st Degree Felony); 2) corruption of minors 18 § 6301 § A1i (1st Degree Misdemeanor); and 3) endangering welfare of children 18 § 4304 §§ A1 (1st Degree Misdemeanor)?

Appellant's brief at 7 (capitalization omitted).

Appellant's first issue challenges the sufficiency of the evidence underpinning his convictions. Whether the evidence was sufficient to support Appellant's convictions presents a matter of law. Thus, our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Walls***, 144 A.d 926, 931 (Pa.Super 2016) (citation omitted). The following principles are well-established:

There is sufficient evidence to sustain a conviction when the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to enable the fact-finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Further, we note that the entire trial

> record is evaluated and all evidence received against the defendant is considered, being cognizant that the trier of fact is free to believe all, part, or none of the evidence.

*Commonwealth v. Diaz*, 152 A.3d 1040, 1043-44 (Pa.Super. 2016) (internal quotation omitted, citation omitted). Generally, a witness's credible testimony is sufficient to prove an element of a crime. This is especially true in this context, where we have previously held that "the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, despite contrary evidence from defense witnesses." *Commonwealth v. Charlton*, 902 A.2d 554, 562 (Pa.Super. 2006) (quoting *Commonwealth v. Davis*, 650 A.2d 452, 455 (Pa.Super. 1994)).

As is relevant herein, the Crimes Code defines unlawful contact with a minor as the intentional contact with a minor for the purpose of engaging in activity prohibited by chapter 31 (relating to sexual offenses). 18 Pa.C.S. § 6318(a)(1). Corruption of a minor is defined as "whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime[.]" 18 Pa.C.S. § 6301(a)(1). Finally, a person endangers the welfare of a child if, while "supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly

endangers the welfare of a child by violating a duty of care, protection or support." 18 Pa.C.S. § 4304(a)(1).

Appellant premises his argument on the line of reasoning enunciated by our Supreme Court in **Commonwealth v. Farquharson**, 354 A.2d 545 (Pa. 1976). In this vein, he contends that the evidence presented against him was "so unreliable or contradictory as to make any verdict based thereon obviously the result of conjecture and not reason[.]" **Id**. at 550; Appellant's brief at 21. Appellant argues that the testimony presented by Ms. Benjamin and J.B.B. was "riddled with inconsistencies and falsities." Appellant's brief at 22. He emphasizes discrepancies in J.B.B.'s account of the incident, as reported by Ms. Benjamin, such as the presence of a fish tank in the room where the assault took place, when there was no such fish tank, J.B.B.'s failure to name Appellant as his assailant until being probed by Ms. Benjamin for additional information, and J.B.B.'s initial assertion that Appellant bit his penis.

Appellant also contends that J.B.B.'s testimony was inconsistent, and thus, wholly unreliable. He highlights portions of J.B.B.'s testimony where he appears to contradict himself, including statements that Appellant forced J.B.B. to perform fellatio on him, which contradicted a statement to the contrary which J.B.B. offered on direct examination. J.B.B. also testified to wearing "church clothes" during the incident, but on cross-examination, he stated that he was wearing pajamas. Appellant's brief at 23. Appellant

alleges that such inconsistencies render the whole of J.B.B.'s testimony so unreliable that it cannot provide sufficient support for his convictions.

Appellant bolsters his conclusion by noting that the Commonwealth failed to prove that J.B.B. was wearing the underwear upon which investigators ultimately found his DNA, and that none of his DNA was found on J.B.B.'s penis. Essentially, he maintains the trier of fact should have credited his explanation that his DNA was found on J.B.B.'s clothing because he "regularly handled" J.B.B.'s clothing "doing laundry, washing, and folding clothes." *Id*. at 24. Further, the finder of fact should have determined that J.B.B.'s injuries were likely caused by the child, himself, as multiple witnesses testified that the victim "fondled himself excessively." Appellant's brief at 26. Finally, Appellant highlights the testimony of his witnesses, which spoke highly of him and his relationship with J.B.B.

At the outset, we note that much of Appellant's argument reads as a challenge to the weight of the evidence, and, as noted above, the finder of fact was free to believe, all, or none of the evidence. *Diaz*, *supra*. Thus, the jury was free to disbelieve Appellant's innocent explanations for the evidence against him, and, when convicting him of the above-enumerated offense, it clearly credited the Commonwealth's testimony offered against him. As we previously observed, our standard of review dictates that we review the evidence of record in the light most favorable to the

- 6 -

Commonwealth to determine whether the jury's findings are sufficiently supported.

Instantly, Ms. Benjamin testified that, on March 14, 2013, she returned to her grandmother's house to pick up J.B.B., who had stayed over the previous night. After her arrival, J.B.B. told his mother that "somebody sucked my penis." N.T. Trial, 11/19/15, at 12. When she pressed J.B.B. for additional information, he indicated "[Appellant] sucked my penis." *Id*. J.B.B. then pulled his pants down revealing his penis was "swollen and red and bruised." *Id*. at 13. Ms. Benjamin noted that, at the time of the incident, J.B.B. was wearing brand new clothes, which had only been washed once at her own home. *Id*. at 17.

J.B.B., who was five-years old at the time of trial, also testified. J.B.B. recounted the events that occurred in March 2013, and stated that Appellant "sucked my penis." *Id*. at 44. He noted that, at the time of the event, he was wearing "church clothes." *Id*. at 45. J.B.B. also asserted that Appellant removed his own clothes while in the room with J.B.B., so that J.B.B. observed Appellant's private parts. *Id*. at 46-47. J.B.B. testified that, Appellant, while naked, implored J.B.B. to "suck it, man, suck it," but J.B.B. denied complying with that command. *Id*. at 47. On cross-examination, J.B.B. offered that he was wearing "pajamas" at the time of his assault. *Id*. at 52. In addition, he stated, "[Appellant] forced me to suck his penis." *Id*. at 53.

The Commonwealth offered the testimony of Modupe Adewumi, an expert in field forensics, and Bryne Strother, an expert in DNA analysis. Ms. Adewumi analyzed physical evidence obtained during the investigation into Appellant's assault, including the sexual assault test kit used on J.B.B. during his treatment at the hospital, and J.B.B.'s clothing, which had been collected at the hospital. This evidence revealed P-30, an enzyme commonly found in seminal fluid, present on J.B.B.'s sock. N.T. Trial, 11/18/15, at 75-77. Ms. Strother detailed her analysis of the DNA evidence obtained from J.B.B.'s clothing. In this regard, she discovered the presence of Appellant's DNA on J.B.B.'s sock, the crotch of J.B.B.'s pants, and the crotch of J.B.B.'s underwear. *Id*. at 90-94. Further, she clarified that, although DNA was not found on J.B.B.'s body, this was common, since it is easily removed from the body by washing or other mechanisms. *Id*. at 96-97. In contrast, clothing is a "good material to adhere to[.]" *Id*. at 97. Lastly, the Commonwealth offered medical reports from J.B.B.'s hospital visit that confirmed that, on March 14, 2013, he presented with a red and swollen penis.

We find that, when viewing this evidence in the light most favorable to the Commonwealth as verdict-winner, the evidence supporting Appellant's convictions was not so unreliable or contradictory as to amount to nothing more than mere conjecture. *Diaz*, *supra*; *Farquharson*, *supra*. Thus, we find that is was sufficient to establish the elements of his offenses beyond a reasonable doubt. Although J.B.B.'s testimony was inconsistent at times, he

unequivocally stated that Appellant performed fellatio on him. This testimony, alone, was sufficient to support Appellant's convictions. **Charlton**, **supra**. In addition, J.B.B.'s testimony was corroborated by the physical evidence proffered by the Commonwealth, and was consistent with Ms. Benjamin's retelling of the night in question. In light of this support, the discrepancies in Appellant's testimony did not undermine the sufficiency of the evidence underpinning Appellant's convictions. Hence, this claim fails.

Appellant's second issue raises a challenge to the weight of the evidence. A claim that the verdict was against the weight of the evidence must be raised with the trial judge in a motion for a new trial orally, on the record, or in writing prior to sentencing, or in a post-sentence motion. Pa.R.Crim.P. 607(A). Since the record reveals that Appellant failed to raise this issue before the trial court pursuant to Pa.R.Crim.P. 607, this claim is waived. **Commonwealth v. Kinney**, 157 A.3d 968, 972 (Pa.Super. 2017).

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/12/18