J-A02043-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BRANDON JULE PYLE | : | |
| | : | |
| Appellant | : | No. 266 WDA 2025 |

Appeal from the Judgment of Sentence Entered October 15, 2024
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0000407-2023

BEFORE: STABILE, J., MURRAY, J., and BECK, J.

MEMORANDUM BY BECK, J.: **FILED: APRIL 24, 2026**

Brandon Jule Pyle ("Pyle") appeals from the judgment of sentence imposed by the Westmoreland County Court of Common Pleas (the "trial court") following his convictions of criminal attempt of sexual assault and simple assault.[1] On appeal, Pyle challenges the weight of the evidence supporting his attempt of sexual assault and simple assault convictions. Because we conclude that the trial court did not abuse its discretion in rejecting Pyle's weight of the evidence claim, we affirm.

On November 25, 2022, Pyle and his wife, Katie Atkinson ("Atkinson"), returned home from Thanksgiving dinner at Atkinson's mother's residence. N.T., 6/5/2024, at 51-52. As they were lying in bed, Atkinson discovered

_____

[1] 18 Pa.C.S. §§ 901(a), 2701(a)(1).

email messages containing homosexual pornography and escort services on Pyle's phone. *Id.* at 52. Atkinson confronted Pyle and told him that she would never have sex with him again. *Id.* In response, Pyle pushed her down onto the bed, ripped off her pants, exposed his penis, and attempted to choke her and have sexual intercourse with her. *Id.* Pyle stopped after Atkinson pleaded with him and repeatedly screamed "no no no." *Id.* Ultimately, Atkinson was able to go to the bathroom and called the police. *Id.* at 56. She ended the call when she heard Pyle approaching the bathroom because she "was scared that [she] was going to get seriously hurt or die." *Id.* at 57.

Corporal Gregory Stull responded to the dispatch call and arrived at Pyle and Atkinson's residence shortly after 2:00 a.m. that morning. *Id.* at 115. Atkinson answered the front door and Pyle stood behind her, pleading with her and saying, "Katie, please don't do this." *Id.* at 116. Atkinson asked to speak to Corporal Stull privately and they stepped outside, away from Pyle. *Id.* at 116. Atkinson told Corporal Stull about the argument regarding "prostitutes on [Pyle's] phone," the assault, and that she "was afraid he was going to rape her." *Id.* at 116-17. Corporal Stull then spoke to Pyle separately, who admitted to attacking Atkinson, stating, "she wasn't going to fuck me anymore, so I pushed her down" and that "he tried to pull her pants down and he was going to fuck her." *Id.* at 120. Corporal Stull told Pyle to stop talking and arrested him. *Id.* at 120-21, 124.

The Commonwealth charged Pyle with attempted sexual assault and simple assault. At the ensuing jury trial, the Commonwealth presented testimony from Atkinson and Corporal Stull. Relevantly, Atkinson testified that Pyle assaulted her twice, rather than once, on the night of the incident and that he tried to choke her during both assaults. *Id.* at 52. She further testified that during the second assault, he pounded a hole in the wall and threatened her with a rope. *Id.* at 54-55; *see also id.* at 60-61. Lastly, she told the jury that Pyle took her phone from her and kept her captive in their bedroom for hours before she could call the police. *Id.* at 56. She did not report any of these facts to Corporal Stull.

On cross-examination, defense counsel questioned Atkinson about these inconsistencies, and she admitted that she did not mention two separate assaults in either her initial verbal statement to Corporal Stull or in her written statement. *Id.* at 98, 99; *see also id.* at 105-06. She also admitted that she did not report that Pyle took her phone and held her captive in either of her initial statements. *Id.* at 106.

The jury convicted Pyle of the aforementioned crimes. The trial court sentenced him to an aggregate prison term of thirty to sixty months. The sentence also required Pyle to register under Pennsylvania's Sex Offender Registration and Notification Act,[2] obtain a mental health evaluation, have no

---

[2] 42 Pa.C.S. §§ 9799.10-9799.42.

contact with Atkinson, and pay costs and fees. Subsequently, the trial court amended the sentence to require Pyle to comply with Pennsylvania Parole Board's Standard Special Conditions for Sex Offenders and Optional Special Conditions for Sex Offenders. Pyle filed a timely post-sentence motion, arguing the verdicts were against the weight of the evidence because Atkinson's testimony was inconsistent and unsupported by physical evidence. The trial court did not address the motion, and it was deemed denied by operation of law; however, neither the trial court nor the clerk of courts entered an order on the record. Nevertheless, Pyle filed an appeal within thirty days of the date the motion should have been denied by operation of law,[3] and a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).

On appeal, Pyle presents the following issue for review: "Whether the jury's verdict[ was] against the weight of the evidence when the victim, []

---

[3] On May 30, 2025, this Court directed Pyle's counsel to show cause why the appeal should not be quashed as untimely filed, and to apprise this Court as to whether counsel filed a praecipe with the trial court for entry of an order denying the post-sentence motion by operation of law. Counsel filed a response, arguing that the appeal was timely filed, that the trial court never issued an order denying the post-sentence motion, and there is no requirement under Pa.R.Crim.P. 720 for counsel to request the entry of an order denying the post-sentence motion. On June 27, 2025, this Court issued an order, finding that the post-sentence motion was timely filed, and directing the trial court to issue an order denying the motion by operation of law. The trial court subsequently issued the order, perfecting this Court's jurisdiction.

Atkinson, gave varied and inconsistent versions of events that were not supported by any physical evidence?" Pyle's Brief at 2.

Pyle challenges the weight of the evidence supporting his convictions, arguing that Atkinson's inconsistent testimony in conjunction with a lack of corroborating evidence established a miscarriage of justice. *Id.* at 8-14. He argues that Atkinson's varied and inconsistent testimony should not have been believed by the jury. *Id.* at 11, 12, 13. He claims that Atkinson testified to several events at trial that she failed to mention in her verbal and written statements to police, and notes that she was forced to admit at trial that Pyle did not take her phone and hold her captive for hours or that he assaulted her twice rather than once. *Id.* at 13. Pyle contends that Atkinson's omissions demonstrate her "willingness to mischaracterize, change, or fabricate" her testimony at trial. *Id.*

Further, he notes that Atkinson suffered no physical injuries. *Id.* at 10, 14. More specifically, Pyle asserts that even if Atkinson's account of his attempt to choke her is taken as fact, it does not demonstrate an attempt to cause bodily harm because Atkinson "appeared to repel or deflect [him] with little effort, demonstrating that [he] was not in fact making an attempt to injure her." *Id.* at 12; *see also id.* at 14.

The following legal principles apply to a trial court's consideration of a challenge to the weight of the evidence supporting a conviction:

> An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A

new trial should not be granted because of a mere conflict in testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence does not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

Thus, to allow an appellant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the trial court.

*Commonwealth v. Juray*, 275 a.3d 1037, 1046-47 (Pa. Super. 2022) (quotation marks and citations omitted).

Our standard of review for weight of the evidence claims raised on appeal, however, differs from that of the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Id.* at 1047 (citation omitted).

"A person commits an attempt when with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901. "Although the Crimes Code

- 6 -

does not define 'substantial step,' our courts have focused on what measures the actor has already undertaken in pursuance of the crime which indicate his or her resolve toward the commission of that crime." **Commonwealth v. Youngster**, __ A.3d __, 2026 WL 274721, *5 (Pa. Super. 2026). A person commits sexual assault when, "except as provided in section 3121 (relating to rape) or 3123 (relating to involuntary deviate sexual intercourse), … that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent." 18 Pa.C.S. § 3124.1. Finally, a person commits simple assault if he, in relevant part, "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]" **Id.** § 2701(a)(1).

The trial court found that a reasonable factfinder could conclude, based on the evidence presented, that Pyle "attempted to engage in sexual intercourse or deviate sexual intercourse with Atkinson without her consent, and that he also engaged in simple assault by attempting to cause bodily injury to Atkinson." Trial Court Opinion, 4/1/2025, at 6. According to the trial court, the testimony from Atkinson and Corporal Stull established that Pyle pushed Atkinson down, ripped or attempted to rip off her pants, and positioned himself on top of her while she cried and screamed for him to stop, constituting a substantial step in committing sexual assault against Atkinson. **Id.** The court observed that Pyle's own admission that he "tried to pull her pants down and he was going to fuck her" after Atkinson told him she "wasn't

going to fuck [him] anymore" established that he attempted to sexually assault Atkinson. *Id.* at 7; *see also id.* at 8 (noting Corporal Stull's testimony corroborates Atkinson's testimony about Pyle's conduct). Defense counsel fully questioned Atkinson about the inconsistencies in her testimony, and the court found that these inconsistencies did not negate her testimony regarding the incident or Pyle's admissions that he attempted to sexually assault her and attempted to cause her bodily injury. *Id.* at 7-8; *see also id.* at 8 ("Corporal Stull testified that, even though Atkinson's statement to police mentioned only one attempted assault, nothing in the statement is inconsistent with her testimony or would have changed the initial outcome"). Additionally, the trial court rejected Pyle's argument that the Commonwealth failed to produce any physical evidence of injury, finding evidence of physical injury is not an element of either of the crimes of attempted sexual assault or simple assault. *Id.* at 8.

We conclude that the trial court did not abuse its discretion in rejecting Pyle's challenge to the weight of the evidence to support his convictions. Pyle's argument rests on the inconsistencies in Atkinson's testimony, which the jury heard and was extensively explored by defense counsel on cross-examination. It is the role of the factfinder, not this Court, to resolve "contradictory testimony and questions of credibility," and "[w]e cannot substitute our judgment for that of the factfinder." *Commonwealth v. Salinas*, 307 A.3d 790, 795 (Pa. Super. 2023). Based upon the jury's

apparent credibility determination in favor of Atkinson and Corporal Stull, it found that Pyle committed the acts alleged—a conclusion that finds ample support in the record based not only on Atkinson's testimony about Pyle's conduct, but Pyle's admission to Corporal Stull. The absence of corroborating physical evidence does not undermine the credible testimony by Atkinson and Corporal Stull, as it was within the province of the jury to determine the weight to be placed upon the testimony that was presented. **See Commonwealth v. Diaz**, 152 A.3d 1040, 1047 (Pa. Super. 2016) (finding the trial court did not abuse its discretion in denying a weight challenge where the uncorroborated testimony of a sexual assault victim was found credible by the trier of fact).

We find no abuse of discretion in the trial court's denial of Pyle's weight claim. **See Commonwealth v. Gilliam**, 294 A.3d 257, 270 (Pa. Super. 2021) (concluding that the trial court did not abuse its discretion in denying appellant's weight challenge where he merely asked this Court to assume the role of factfinder and reweigh the evidence in his favor).

This does not end our review. Although not raised by Pyle, our review of the record found that a portion of his sentence is illegal. **See Commonwealth v. Armolt**, 294 A.3d 364, 376 (Pa. 2023) ("An appellate court may address, and even raise sua sponte, challenges to the legality of an appellant's sentence even if the issue was not preserved in the trial court.") (citation omitted).

If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law.

*Commonwealth v. Leverette*, 911 A.2d 998, 1001-02 (Pa. Super. 2006) (citations omitted).

As stated in our discussion of Pyle's sentencing order, the trial court therein included a requirement that he have no contact with Atkinson. We have previously held, however, that a trial court has no authority to include a no contact provision for a defendant issued a state sentence (i.e., if the term of imprisonment imposed is for two years or more). *Commonwealth v. Merced*, 308 A.3d 1277, 1283 (Pa. Super. 2024).

Where the trial court imposes a maximum imprisonment sentence of two or more years, the Pennsylvania Board of Probation and Parole ("PBPP") has exclusive authority over the terms of the defendant's parole. *See* 61 Pa.C.S. § 6132. Further, the authority to impose a non-contact provision as a special condition of a defendant's state incarceration rests with the Pennsylvania Department of Corrections ("DOC"). Therefore, trial courts do not have statutory authority to impose conditions on a state sentence, and any condition the sentencing court purports to impose on a defendant's state parole is advisory only.

*Id.* at 1283–84 (case citations, quotation marks, and brackets omitted).

As the trial court sentenced Pyle to thirty to sixty months of incarceration, it lacked statutory authority to require a condition of no contact in its sentencing order. It could, however, "recommend" this condition in its sentencing order. *Id.* at 1284. Therefore, as we did in *Merced*, "we vacate the sentencing order and remand for resentencing. On remand, if it is so

- 10 -

inclined, the trial court may suggest implementation of conditions limiting contact or presence at the victims' residence." *Id.* Having found no merit to the claims raised by Pyle on appeal, in all other respects, we affirm Pyle's judgment of sentence.

Judgment of sentence affirmed in part and vacated in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 4/24/2026