J-S78020-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAVIER RODRIGUEZ | : | |
| | : | |
| Appellant | : | No. 640 WDA 2017 |

Appeal from the Judgment of Sentence April 3, 2017
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000994-2016

BEFORE:   OLSON, J., DUBOW, J., and STRASSBURGER*, J.

MEMORANDUM BY DUBOW, J.:                        FILED MARCH 26, 2018

Appellant, Javier Rodriguez, appeals from the April 3, 2017 Judgment of Sentence entered following his jury conviction of one count of Indecent Assault.  We affirm.

Police charged Appellant with one count each of Indecent Assault and Corruption of Minors[1] arising from allegations by the then 12-year-old victim,[2] that on July 14, 2015, Appellant touched her vaginal area over her underwear.

_____

[1] 18 Pa.C.S. § 3126(a)(7) and 18 Pa.C.S. § 6301(a)(1)(i), respectively.

[2] Appellant is the live-in boyfriend of the victim's aunt.

_____
*   Retired Senior Judge assigned to the Superior Court.

At Appellant's trial, the Commonwealth presented the testimony of the victim; Michelle Fisher, a forensic interviewer at the Children's Advocacy Center; and Detective Sergeant John Holmes of the Erie Police Department.

The victim testified that she had a close relationship with Appellant, whom she saw as a father figure. N.T., 2/16/17, at 24, 39. She stated that, on the night prior to the incident, she had slept at Appellant's house with her cousins, her aunt, and her sister, and that Appellant had returned home from work in the morning of July 14, 2015. Id. at 25. After Appellant returned home, the victim, her sister, her cousins, and Appellant were tickling each other and watching T.V. in the living room, while her aunt was upstairs in bed with a migraine. Id. at 26. The victim testified that she, Appellant, and the other kids often played tickling games, but they would only tickle in the armpit or the neck, not in the vaginal area or on the thighs. Id. at 35, 41. On July 14, 2015, after the tickling had stopped so everyone could watch cartoons, Appellant and the victim were side-by-side on the couch, when Appellant "went up [her] basketball shorts and touched [her]." Id. at 27. The victim stated that Appellant touched her vagina over her underwear, while a blanket was covering them. Id. at 28-30. When she pushed his arm away he tried to touch her again but "he didn't get to." Id. The victim asked Appellant why he touched her, and he replied that he had not meant to touch her and that he was sorry. Id. at 31-32, 43-44. The victim testified that Appellant and the kids frequently played tickling games, but noted that Appellant had never tickled her vagina and they had not been

tickling each other on the couch before he touched her vagina. Id. at 35-36. The victim testified that she initially did not want to report the incident to police because she was worried about her cousins.[3] Id. at 36.

Ms. Fisher testified that she interviewed the victim on November 30, 2015. Id. at 55. The court played the videotape of this interview to the jury and admitted it into evidence as Exhibit 1. See Exhibit 1—Videotaped Interview, 11/30/15. In her interview, the victim explained that Appellant asked her to lie by him on the couch and she covered herself with a blanket because she was cold. The victim told Ms. Fisher that Appellant reached up her shorts once and touched her vagina over her underwear with his hand. The victim stated that she asked Appellant why he touched her and he denied doing it and said that if he touched her it was unintentional and he was sorry. The victim told the interviewer that she had reported the incident to her aunt immediately after it happened—and Appellant told the victim's aunt that it had been an accident.

Detective Holmes testified that, during the course of the investigation of the victim's allegations, he questioned Appellant on December 8, 2015.[4] Id. at 65. The court played a videotape of this interview to the jury and

_____

[3] Some months after the incident, the victim reported the incident to a teacher, who then reported it to police.

[4] Appellant waived his Miranda rights and consented to the video recording of his interview.

admitted it into evidence. See Exhibit 2—Videotaped Interview, 12/8/15. During Detective Holmes' interview of Appellant, Appellant described the part of the couch upon which he was sitting as being reclined and he noted that he was reclined on it because he wanted to take a nap. Appellant asserted that at times in the past he had tickled the victim's thigh. Appellant also admitted that this time he did put his hands up the victim's shorts "a little bit," but he did not think he had touched her vagina. Appellant initially stated that, if his hand touched the victim's vagina, it was unintentionally. Appellant later admitted, however, that he did not want to do it, but he was not "in the right mindset" at the time. Detective Holmes asked Appellant if everything the victim had reported to police had happened and Appellant admitted that it had. Appellant agreed with Detective Holmes that the victim had no reason to lie.

Appellant also testified at trial. He testified that he and the kids, including the victim, often played around by tickling, telling jokes, and wrestling. N.T., 2/16/17, at 103. Appellant testified that if he touched the victim, it "wasn't what she thought it was[;]" it was an accident. Id. at 105-06, 110. Appellant testified that, in the past, he had tickled the victim's thighs. Id. at 105. Appellant also stated that his statements to the police that implied that the touching was anything other than an accident were a result of him feeling intimidated by Detective Holmes. Id. at 108. On cross-examination, Appellant admitted that he touched the victim's vagina, but maintained he did not do so intentionally. Id. at 109-111, 115.

- 4 -

Prior to the court's instructions to the jury, Appellant asked the court to incorporate the definition of intent set forth in 18 Pa.C.S. § 302(b)(1) (General requirements of culpability). The Commonwealth objected to this request, and asked that the court read only the standard jury instructions. The court denied Appellant's request, and informed the parties that it would read the standard jury instruction, noting that the definition of Indecent Assault includes the requisite mens rea—that the act be performed for the purpose of arousing his or her or the victim's sexual desires. N.T., 2/17/17, at 29-30. The court also noted that the "standard instruction for the corruption of minors; corruption implies intent as well." Id. at 30.

The jury convicted Appellant of Indecent Assault, but not of Corruption of Minors. On April 3, 2017, the court sentenced Appellant to 3 to 12 months' incarceration, 3 years' probation, and ordered him to register for his lifetime as a sexual offender. Appellant filed a timely Post-Sentence Motion, which the court denied on April 17, 2017. This appeal followed.[5]

Appellant raises the following two issues on appeal:

1. Did the Commonwealth present sufficient evidence to sustain Appellant's conviction for indecent assault?

2. Did the trial court commit an abuse of discretion and/or error of law when it refused to instruct the jury on the definition of intent outlined in the crimes code?

Appellant's Brief at 7.

_____

[5] Appellant and the trial court complied with Pa.R.A.P. 1925.

In his first issue, Appellant challenges the sufficiency of the Commonwealth's evidence in support of his conviction of Indecent Assault. He contends that the Commonwealth failed to prove that he touched the victim "for the purpose of arousing or gratifying his sexual desire." Id. at 18.

Our standard of review of a challenge to the sufficiency of the evidence is well-settled.

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt.

Commonwealth v. Koch, 39 A.3d 996, 1001 (Pa. Super. 2011) (citations omitted).

Evidentiary sufficiency presents a question of law; thus, our standard of review is de novo and our scope of review is plenary. Commonwealth v. Johnson, 107 A.3d 52, 66 (Pa. 2014) (citation omitted).

A person commits the offense of Indecent Assault if, in relevant part, he has indecent contact with the victim "for the purpose of arousing sexual desire" in himself or the victim, and the victim is less than 13 years old. 18 Pa.C.S. § 3126(a)(7). The Crimes Code defines "indecent contact" as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S. § 3101.

"[T]he uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient" to sustain a conviction. Commonwealth v. Diaz, 152 A.3d 1040, 1047 (Pa. Super. 2016) (citation omitted); 18 Pa.C.S. § 3106.

Our review of the instant matter, including the videotaped recordings of the interviews of the victim and Appellant, as well as the trial testimony, indicates that the evidence, when viewed in the light most favorable to the Commonwealth as verdict-winner, and all reasonable inferences drawn therefrom, supports Appellant's conviction. Here, the victim testified that, after she and Appellant and the other kids had stopped tickling each other, Appellant purposefully "went up [her] basketball shorts and touched [her vagina]." Notably, Appellant admitted in his interview with police that everything the victim reported to police was true. Moreover, the jury's inference that Appellant intended to touch the victim's vagina was reasonable where the victim testified that Appellant had never before tickled her thighs, and reported to Ms. Fisher that Appellant had asked her to lay down next to him on the couch. Given the jury's reasonable inference that Appellant intentionally touched the victim's vagina, it is likewise reasonable that the jury would conclude that there is no non-sexual reason for an adult man to intentionally touch the vagina of a 12-year old girl. Here, Appellant asks this Court to reweigh the evidence and substitute our judgment for that

of the jury. We will not do so. Appellant's sufficiency claim warrants no relief.

In his next issue, Appellant avers that the trial court abused its discretion when it refused to provide the jury with an independent definition of intentional or purposeful conduct as set forth in 18 Pa.C.S. § 302. Appellant's Brief at 20. Appellant argues that the court should have augmented the standard instruction with language that, "[a] person acts intentionally with respect to a material element of an offense when[,] if the element involves the nature of the conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result." Appellant's Brief at 20, citing 18 Pa.C.S. §302(b)(1)(i).

We review a trial court's refusal to give a requested jury instruction to "determine whether the record supports the trial court's decision." Commonwealth v. Sandusky, 77 A.3d 663, 667 (Pa. Super. 2013) (citation omitted). We are tasked with considering "whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case." Id. (citation omitted). "[W]hen evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper." Commonwealth v. Charleston, 94 A.3d 1012, 1021 (Pa. Super. 2014) (citation omitted). "The trial court is not required to give every charge that is requested by the parties and its refusal to give a

requested charge does not require reversal unless the Appellant was prejudiced by that refusal." Sandusky, 77 A.3d at 667 (citation omitted).

The record reflects that the court read Pennsylvania Standard Jury Instruction 15.3126C regarding Indecent Assault of a Child in charging the jury. With respect to the requisite mens rea, that instruction provides that, to prove the charge, the Commonwealth must prove that the defendant "touched the sexual or other intimate parts of [the victim's] body and that the defendant did so for the purpose of arousing his own or the victim's sexual desire." SJI 15.3126C (emphasis added). The court explained its decision to deny Appellant's request to incorporate into the jury instruction the definition of intent found in Section 302 of the Crimes Code by noting its belief that "intent" is implied in the Indecent Assault standard jury instruction. N.T., 2/17/17, at 30. We agree.

The standard jury instruction includes the mandate that the jury determine whether the Commonwealth demonstrated beyond a reasonable doubt that Appellant touched the victim with the intention of arousing his own sexual desire or the sexual desire of the victim. This is the applicable mens rea as provided in 18 Pa.C.S. § 3126(a)(7). Because the trial court's jury instruction directed the jury to make a specific finding as to the Appellant's state of mind at the time he touched the victim, the trial court did not abuse its discretion or err as a matter of law in refusing to

incorporate the general definition of intent into its jury instruction. Thus, this claim fails.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/26/2018