J-S19035-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ABDELLAH ELKADDI | : | |
| | : | |
| Appellant | : | No. 2535 EDA 2016 |

Appeal from the Judgment of Sentence July 26, 2016
in the Court of Common Pleas of Montgomery County
Criminal Division at No.:  CP-46-CR-0005373-2015

BEFORE:   SHOGAN, J., NICHOLS, J., and PLATT*, J.

MEMORANDUM BY PLATT, J.:                         **FILED JULY 13, 2018**

Appellant, Abdellah Elkaddi, appeals from the judgment of sentence imposed following his jury conviction of sexual assault, 18 Pa.C.S.A. § 3124.1; aggravated indecent assault, 18 Pa.C.S.A. § 3125(a)(1); and indecent assault without consent, 18 Pa.C.S.A. § 3126(a)(1).[1]  Appellant challenges the sufficiency of the evidence.  We affirm on the basis of the trial court opinion.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.  (**See** Trial Court Opinion, 10/18/17, at 2-9).  Therefore, we have no reason to restate them at length here.

---

[1] The jury acquitted Appellant of rape, and a separate count of aggravated indecent assault.  The Commonwealth *nolle prossed* a charge of aggravated indecent assault/forcible compulsion.

---

\*   Retired Senior Judge assigned to the Superior Court.

For the convenience of the reader, we note briefly that M.M., the Victim, then a twenty-four year old intern, promptly reported that she was raped by her Uber driver, Appellant, when she fell asleep on the way home after an evening of social drinking with her co-workers, and various incidental mishaps. When the police followed up with him, Appellant denied everything (including, apparently, transporting the Victim), until confronted with seminal, DNA, and other evidence.

At trial, defense counsel had to concede that Appellant lied. He then proceeded to try to make a liar out of the Victim. The defense strategy shifted to a claim of consensual sex. The Victim steadfastly insisted there was no consent, in testimony the trial court found "compelling." (Trial Ct. Op., at 12). Appellant exercised his constitutional right against self-incrimination, and declined to testify.

Defense counsel continually attacked the credibility of the Victim, challenging both real and conjectural inconsistencies in her testimony. He repeatedly insisted that the Victim lied to cover up her immediate regret for a spontaneous sexual encounter with Appellant, whom she had just met that night. Defense counsel also argued the physical unfeasibility of having non-consensual sex in the front passenger seat of Appellant's Chevrolet Malibu.

The prosecutor argued to the jury that if the Victim had an immediate attack of regret over consensual sex with Appellant, the most sensible course of action would have been not to tell anybody, rather than to claim rape.

After his conviction, Appellant received an aggregate sentence of not less than seven and one-half nor more than fifteen years of incarceration, followed by five years of probation.[2]  This timely appeal followed.

Appellant raises one question for our review:

> I. Was the evidence insufficient to prove Appellant's guilt of the crimes of sexual assault, aggravated indecent assault, and indecent assault without consent?

(Appellant's Brief, at 4).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court, we conclude that there is no merit to the issue Appellant has raised on appeal.  The trial court opinion properly disposes of the question presented.  (**See** Trial Ct. Op. at 9-13) (concluding that: (1) the Commonwealth presented sufficient evidence to establish every element of each crime for which Appellant was convicted; and (2) "the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, despite contrary evidence from defense witnesses."  **Commonwealth v. Diaz**, 152 A.3d 1040, 1047 (Pa. Super. 2016), *appeal denied*, 169 A.3d 544 (Pa. 2017) (quoting **Commonwealth v. Charlton**, 902 A.2d 554, 562 (Pa. Super. 2006) *appeal denied*, 911 A.2d 933 (Pa. 2006)).

---

[2] The trial court determined Appellant not to be a Sexually Violent Predator.

Moreover, we note that Appellant's Rule 1925(b) general claim of insufficiency, which fails to identify any specific defect in the Commonwealth's evidence, is too vague to enable meaningful appellate review, and would therefore be waived. (*See* Concise Statement, 10/14/16, at 2).

"[W]hen challenging the sufficiency of the evidence on appeal, the [a]ppellant's [Rule] 1925 statement must 'specify the element or elements upon which the evidence was insufficient' in order to preserve the issue for appeal." ***Commonwealth v. Gibbs***, 981 A.2d 274, 281 (Pa. Super. 2009), *appeal denied*, 3 A.3d 670 (Pa. 2010) (quoting ***Commonwealth v. Williams***, 959 A.2d 1252, 1257 (Pa. Super. 2008)). "Such specificity is of particular importance in cases where, as here, the Appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." ***Id.*** (quoting ***Williams*** at 1258 n.9).

Furthermore, as aptly observed by the Commonwealth, Appellant's attack on the Victim's credibility actually goes to weight, not sufficiency. (***See*** Commonwealth's Brief, at 8-10). However, Appellant failed to preserve a weight claim by raising it with the trial court judge. ***See*** Pa.R.Crim.P. 607. It would also be waived for failure to include it in the Pa.R.A.P. 1925(b) statement. ***See Commonwealth v. Castillo***, 888 A.2d 775, 780 (Pa. 2005).

In any event, even if properly raised and preserved, a weight claim would not merit relief.

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice.

**Commonwealth v. Champney**, 832 A.2d 403, 408 (Pa. 2003), *cert. denied*,

542 U.S. 939 (2004) (citations omitted).

It was the province of the jury sitting as factfinder to weigh the evidence and assess credibility. Its verdict does not shock this Court's sense of justice.

For all these reasons, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

*Date: 7/13/2018*

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA**
**CRIMINAL DIVISION**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | SUPERIOR COURT |
| | : | NO. 2535 EDA 2016 |
| v. | : | |
| | : | |
| | : | TRIAL COURT |
| ABDELLAH ELKADDI | : | NO. 5373-2015 |

**ROGERS, J.**                                    **OCTOBER 18, 2017**

### *OPINION*

## I. INTRODUCTION

Following deliberations at the close of a four-day trial, a jury convicted Abdellah Elkaddi ("Appellant") on count 2, sexual assault,[1] count 3, aggravated indecent assault,[2] both felonies in the second degree. In addition, the jury found Appellant guilty of count 6, indecent assault without consent,[3] a misdemeanor of the second degree. The jury acquitted Appellant of count 1, rape, and count 5, aggravated indecent assault while the defendant knows that the complainant is unaware that

---

[1]  18 Pa.C.S.A. § 3124.1.

[2]  18 Pa.C.S.A. § 3125(a)(1).

[3]  18 Pa.C.S.A. § 3126(a)(1).

the penetration is occurring. The Commonwealth *nolle prossed* count 4, aggravated indecent assault/forcible compulsion.

The undersigned imposed a standard range sentence of four and one-half (4 1/2) to nine (9) years' imprisonment on count 2 for sexual assault, a consecutive standard range sentence of three (3) to six (6) years on count 3 for aggravated indecent assault to be followed with five (5) years' probation, consecutive to the expiration of his parole, and a standard range sentence of two (2) years' probation on count 6 for indecent assault without consent to run concurrent with the probation on count 3. Appellant received an aggregate sentence of seven and one-half (7 1/2) to fifteen (15) years' incarceration to be followed by five (5) years' probation. Appellant now appeals from this judgment of sentence.

## II. FACTS AND PROCEDURAL HISTORY

The relevant facts and procedural history underlying this appeal are as follows. After getting up at 5 a.m. on June 10, 2015, for a seven (7) mile run, followed by a full day working as an intern for the Montgomery County District Attorney's Office[4] in Norristown, the Victim ("MM" or "Victim") was looking forward to relaxing after work with coworkers at a happy hour in Bridgeport, Montgomery County. (Notes of Testimony ("N.T.") Trial 4/14/16, at 39-42, 178). At twenty-four (24) years of age, MM had graduated from college and hoped to one day attend law school.

---

[4] Because the victim was an intern for the Montgomery County District Attorney's Office at the time of this sexual assault, the prosecution was handled by then First Assistant District Attorney Michelle Henry of the Bucks County District Attorney's Office.

2

(*Id.* at 37-39). The Victim drove to work and parked in the lot for the County interns next to the Norristown Transportation Center. (*Id.* at 41). MM left work at approximately 4:15 p.m., walked to that parking lot and drove to a Bridgeport restaurant bar where she met up with approximately fifteen (15) to twenty (20) attorneys and other interns, arriving around 5 p.m. (*Id.* at 42-43, 46).

During her estimated three (3) hours of socializing with coworkers, the Victim ate some appetizers and drank approximately three (3) beers. (*Id.* at 47). At that point, some of the attorneys decided to go to the Independence Beer Garden in Philadelphia and invited MM to join them. (*Id.* at 48, 186). MM rode with two (2) of those attorneys into Philadelphia, where they parked the car at one attorney's house and walked to the Beer Garden to meet up with approximately six of the other attorneys from the office. (*Id.* at 49-51, 186-88; N.T. Trial 4/15/16, at 11). The Victim drank part of a pint of beer and later on headed for the restroom. (N.T. Trial 4/14/16, at 51). Because she did not see a sign near either restroom, MM entered the men's restroom by mistake. (*Id.* at 52, 191). Upon exiting the men's restroom, an employee told the Victim she had to leave, which she did. (*Id.*).

As MM explained to the other attorneys that she had to leave, she took her purse and phone and three of the attorneys went outside with her to help her figure out how she could get home since none of them were going back to Norristown that night. (*Id.* at 52-53, 192; N.T. Trial

3

4/15/17, at 14-16). They decided to order a ride to Norristown for her through Uber. (N.T. Trial 4/14/16, at 54-55, 194). Appellant, the Uber driver, arrived in a red, four-door Chevrolet at 11:08 p.m. (*Id.* at 56-57). A couple of the other attorneys walked the Victim to the car and took a photograph of the Uber license plate. (N.T. 4/15/16, at 16). MM entered the backseat of Appellant's car and asked him to take her to the Norristown Transportation Center, where she thought she had left her car. (N.T. 4/14/16 at 59). The pair did not speak most of the way, the Victim texting a friend and Appellant driving. (*Id.* at 60). As they got closer to Norristown and MM noticed her phone battery was dying, she asked Appellant if he had a charger, but he replied that he did not have a charger for the Victim's phone. (*Id.* at 61). Once they got to the parking lot in Norristown, the Victim could not find her car and panicked thinking it had either been towed or stolen. (*Id.* at 61-62). She asked Appellant to take her to the nearby Norristown Police Department so she could inquire about her car. (*Id.* at 63-64). The Victim used the telephone in the lobby of the police station to try to get ahold of an officer. When no one had come to meet with her after a few minutes, she called again. After a few minutes more, Appellant agreed to take MM home. (*Id.* at 67). Out of habit, the Victim entered and sat in the front seat of Appellant's car. (*Id.* at 68). After waiting for a few minutes, Appellant started to drive toward the Victim's home and an exhausted MM fell asleep. (*Id.* at 70).

4

MM awoke to Appellant's one hand on her left breast and his other hand fingering her vagina. (*Id.* at 71). Disoriented and in shock, the Victim told Appellant to stop and to get off of her. (*Id.*). Appellant then climbed over the console and quickly pulled down his pants and climbed on top of MM, putting his penis inside of her vagina. (*Id.* at 72). The Victim screamed at Appellant to get off of her several times, to which he responded "okay, okay" but did not immediately get off of her. (*Id.* at 72-73). When Appellant eventually got off of MM she was able to look around and recognized her surroundings. (*Id.* at 74). Appellant started his car and the Victim began directing him where to drive. (*Id.* at 75). He told her he would take her home but instead she directed Appellant to the West Norriton Police Department nearby. (*Id.*).

After MM had Appellant stop his car a short distance from the police station, she got out and ran across to the police station lobby and dialed 911. (*Id.* at 75-76, 88). Sheldon Coffield, a young man passing by on his way home from a friend's house saw the distraught young woman jump out of a red car and run to the police station. (*Id.* at 76, 215-16). He described the Victim as frightened, crying and scared. (*Id.* at 216-17). The Victim told Mr. Coffield that "The guy in the car just attacked me." (*Id.* at 218). Mr. Coffield stayed with her until Patrol Officer Brian Bishop arrived and then gave the police a statement. (*Id.* at 219, 221).

After Officer Bishop obtained some initial information from MM regarding the Uber driver and the car to get it out to other police units, he

5

took her back to the patrol area to gather more information on the incident. (N.T. Trial 4/15/16, at 36-37). Because the Victim told the officers that her phone was dead, they located a charger to plug it in to get it working to assist in the investigation. (*Id.* at 38). Officer Bishop had trouble understanding the Victim because she was hysterical, crying and "mumbling words a little bit." (*Id.* at 39; N.T. Trial 4/14/16, at 88).

After Officer Bishop finished gathering preliminary information from MM, Officer Marano escorted the Victim to Abington Hospital at approximately 2:05 a.m. on June 11, 2015, where a Sexual Assault Nurse Examiner ("SANE") examined her. (N.T. Trial 4/15/16, at 40, 55). The Victim reported to SANE Nurse Julie Geary that she had woken up to Appellant's hand on her breasts and his fingers in her vagina, that he had kissed her mouth and "also placed his penis inside of her vagina." (*Id.* at 59). The invasive examination took approximately three (3) hours. (*Id.* at 66-67, 68). MM then returned to the West Norriton Township Police Department where Detective Michael Hougnon took her statement starting at 5:55 a.m. (*Id.* at 105). After Detective Hougnon finished taking the Victim's statement, he took her to her house at approximately 7:30 a.m. (*Id.* at 107).

Forensic testing conducted by Detective Edward Schikel on stains on MM's skirt she wore that night and turned over to police revealed blood and seminal fluid. (*Id.* at 85-87). Detective Schikel also collected specimen samples from Appellant, Appellant's clothing and Appellant's

6

car. (*Id.* at 91-95). Test results showed seminal fluid on the front passenger seat of Appellant's car that he had used to pick up the Victim the night before. (*Id.* at 98).

Detective Hougnon, along with his partner, Detective Charles Nabor, and two (2) Philadelphia police officers went to Appellant's residence in Philadelphia and read Appellant his rights. (*Id.* at 107-08, 134). The detectives arrested Appellant and brought him back to the West Norriton police station where they took his statement. (*Id.* at 111). Appellant denied having contact with the Victim and stated "I did not touch her." (*Id.* at 112). Detective Mark Wassmer of the West Norriton Township Police Department and Detective James Reap of the Montgomery County Detective Bureau took Appellant's voluntary formal statement on June 11, 2015. (N.T. Trial 4/18/16, at 7). Appellant denied ever touching MM or ever having sex in the car he had driven the night before. (*Id.* at 19-20).

Forensic Scientist Bern Struther of the Philadelphia Forensic Science Laboratory analyzed vaginal swabs obtained from the Victim during the sexual assault nurse examination. (*Id.* at 25). The uncontested findings are that one of the vaginal swabs was found to have Appellant's sperm on it and the Defendant's DNA. (*Id.* at 25-26).

Appellant proceeded to trial with jury selection on Wednesday, April 13, 2016. The Commonwealth presented the testimony of MM, two of the attorneys who worked with the Victim in the District Attorney's Office, Sheldon Coffield, Officer Brian Bishop, SANE nurse Julie Geary,

7

Detective Edward Schikel, Detective Michael Hougnon, and Detective Mark Wassmer. In addition, the Commonwealth played the videos from the lobby of the Norristown Police Department where Appellant had driven the Victim to help locate her car and the lobby of the West Norriton Police Department where MM made the 911 calls. Finally, the jury heard the Victim's 911 calls to report the sexual assault.

By way of an opening statement, cross examination and closing argument, Counsel laid out Appellant's defense of consent. Appellant did not testify but did present character witnesses to testify about his reputation in the community as a peaceful, law-abiding and nonviolent person. After deliberating six and one-half (6 ½) hours, the jury returned their verdict. The jury believed MM and rejected Appellant's defense of consent. The undersigned excused the jury members at 10:53 p.m. on August 18, 2015. The court deferred sentencing and directed a presentence investigation report and a PPI report be undertaken. (N.T. Trial 4/18/16, at 212). The court also directed that Appellant undergo a sexual offender assessment by order docketed on April 27, 2016.

The undersigned conducted a sentencing hearing on Tuesday, July 26, 2016. The court noted that the sexual offender assessment indicated that Appellant did not meet the criteria to be considered a sexually violent predator. (N.T. Sentencing 7/26/16, at 4). After hearing from the Victim as well as her father and the argument of Counsel, the undersigned imposed the sentence set forth above. (*Id.* at 40-41).

8

Appellant filed a *pro se* notice of appeal on August 17, 2016, which the court forwarded to Appellate Counsel. The undersigned directed Appellant to file a Concise Statement of the Matters Complained of on Appeal ("Statement"), pursuant to Pa.R.A.P. 1925(b) by order docketed on August 19, 2016. Appellate Counsel filed a Motion for a *Grazier* Hearing on August 23, 2016, which the court denied by order on August 25, 2016. Appellate Counsel then filed a *Nunc Pro Tunc* Request for Extension of Time to File Concise Statement on September 13, 2016. The court granted the Request by order docketed on September 14, 2016. Appellant filed his Statement on October 14, 2016.

## III.   ISSUES

Appellant raises the following issue on appeal:

Whether [Appellant] Elkaddi's convictions for sexual assault, aggravated indecent assault, and indecent assault without consent are supported by legally sufficient evidence.

(Appellant's Concise Statement, filed October 14, 2016).

## IV.   DISCUSSION

In his sole issue on appeal, Appellant challenges the sufficiency of the evidence to support his convictions for sexual assault, aggravated indecent assault and indecent assault without consent. His claim lacks merit.

9

The appellate scope and standard of review on claims of insufficient evidence are long settled:

> [W]hether[,] viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 716 (Pa.Super. 2015) (citation omitted).

"[T]he entire trial record is evaluated and all evidence received against the defendant is considered, being cognizant that the trier of fact is free to believe all, part, or none of the evidence." *Commonwealth v. Diaz*, 152 A.3d 1040, 1043-44 (Pa.Super. 2016) (citing *Commonwealth v. Martin*, 627 Pa. 623, [643-44,] 101 A.3d 706, 718 (2014)). "[A] mere conflict in testimony does not render the evidence insufficient." *Commonwealth v. Castelhun*, 889 A.2d 1228, 1232 (Pa.Super. 2005). Finally, it has long been recognized "that the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, despite contrary evidence from defense witnesses." *Diaz, supra* at 1047 (citing *Commonwealth v. Charlton*, 902 A.2d 554, 562

10

(Pa.Super. 2006)); *accord Gonzalez, supra* at 721 (citing *Commonwealth v. Wall*, 953 A.2d 581, 584 (Pa.Super. 2008)).

Instantly, Appellant challenges the evidence adduced in support of the charges of sexual assault, aggravated indecent assault and indecent assault without consent. The crime of sexual assault is defined by statute as follows:

> Except as provided in section 3121 (relating to rape) or 3123 (relating to involuntary deviate sexual intercourse), a person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent.

18 Pa.C.S.A. § 3124.1.

The crime of aggravated indecent assault is defined as follows:

> **(a) Offenses defined.**--Except as provided in sections 3121 (relating to rape), 3122.1 (relating to statutory sexual assault), 3123 (relating to involuntary deviate sexual intercourse) and 3124.1 (relating to sexual assault), a person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if:
>
> (1) the person does so without the complainant's consent[.]

18 Pa.C.S.A. § 3125(a)(1).

> Digital penetration is sufficient to support a conviction for aggravated indecent assault, *Commonwealth v. Filer,* 846 A.2d 139, 141 (Pa.Super. 2004), as is penetration with the defendant's penis. *Commonwealth v. Castelhun,* 889 A.2d 1228, 1233 (Pa.Super. 2005) (evidence was sufficient to support finding that defendant penetrated victim's vagina, as required to support aggravated indecent assault conviction; victim testified that defendant both digitally penetrated her vagina and inserted his penis into her vagina).

11

*Gonzalez, supra* at 723.

The crime of indecent assault without consent is defined as follows:

> **(a) Offense defined.**--A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:
>
> (1) the person does so without the complainant's consent[.]

18 Pa.C.S.A. § 3126(a)(1).

The statutory definition provides: **"'Sexual intercourse.'** In addition to its ordinary meaning, includes intercourse per os or per anus, with some penetration however slight; emission is not required." 18 Pa.C.S.A. § 3101 (emphasis in the original). While circumstantial medical evidence is not necessary, the Commonwealth may use it to prove the element of penetration. *Wall, supra* at 584 (citing *Commonwealth v. Poindexter*, 646 A.2d 1211, 1214 (Pa.Super. 1994)).

Instantly, the Commonwealth presented the compelling testimony of the Victim, who told the jury that after dozing off in the front seat of the Uber car, she awoke to feel Appellant's hand on her left breast and the fingers of his other hand in her vagina. Disoriented and in shock, she repeatedly told him to stop. Instead of stopping, the Victim testified that Appellant climbed on top of her in the front seat and inserted his penis into her vagina. Again, after screaming at him to stop and get off of her

12

several times, Appellant did not stop until he had ejaculated. This evidence demonstrates that each penetration occurred without MM's consent and is sufficient to prove each of the crimes of which the jury found Appellant guilty. In addition to the Victim's testimony, the Commonwealth presented several witnesses who testified that what they observed and heard from MM was consistent with her version of the events from the time she jumped out of Appellant's car and ran into the lobby of the West Norriton Township Police Station.

Viewing the totality of the evidence in the light most favorable to the Commonwealth, this court concludes that the Commonwealth established sufficient evidence at trial to sustain a conviction for sexual assault, aggravated indecent assault and indecent assault without consent. Accordingly, Appellant's claim on appeal merits no relief.

## V. CONCLUSION

Based upon the foregoing analysis, this court respectfully requests that the Superior Court affirm Appellant's judgment of sentence.

BY THE COURT:

THOMAS P. ROGERS, J.
Court of Common Pleas
Montgomery County, Pennsylvania
38th Judicial District

13

Copies sent on 10/18/17 to:
**By Interoffice Mail:**
Deputy District Attorney Robert M. Falin, Chief of Appeals Division,
    Office of the Montgomery County District Attorney
Raymond D. Roberts, Esquire, Chief of Appeals,
    Montgomery County Public Defender's Office
**By First-Class Mail:**
Abdellah Elkaddi, MQ2215, SCI Albion

Judicial Secretary

14