J-S02042-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NICHOLAS ALEXANDER | : | |
| ROSENCRANCE | : | |
| | : | |
| | : | No. 904 MDA 2022 |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered May 3, 2022
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s):  CP-35-CR-0000136-2019

BEFORE:  PANELLA, P.J., OLSON, J., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:          **FILED: MARCH 10, 2023**

Appellant, Nicholas Alexander Rosencrance, appeals from the May 3, 2022 judgment of sentence following his jury conviction of one count each of Aggravated Indecent Assault by Forcible Compulsion, Indecent Assault by Forcible Compulsion, and Sexual Assault.[1]  Appellant challenges the sufficiency and weight of the evidence and an evidentiary ruling, and raises a **Brady**[2] claim.  After careful review, we affirm.

---

[1] 18 Pa.C.S. §§ 3125(a)(2), 3126(a)(2), and 3124.1.

[2] **Brady v. Maryland**, 373 U.S. 83 (1963).

The relevant facts and procedural history are as follows. On October 17, 2018, the victim ("Victim") reported to police that, almost two years earlier in November of 2016, Appellant had sexually assaulted her at a house party.[3]

Following an investigation into the allegations, the Commonwealth charged Appellant with the above crimes.[4]

On September 20, 2021, Appellant's jury trial commenced. The Commonwealth presented the testimony of Victim, witnesses Kayla Pollack and Hallie Brownell,[5] and Lackawanna County Detective Michele Mancuso. Appellant called Scott Township Police Officer Frank Rapoch to testify as on cross-examination.

Victim testified that she and Appellant both attended a party on the night in question. Victim and Appellant had known each other since elementary school, and had mutual friends, but were not themselves close friends. After they engaged in some small talk, Appellant asked Victim to accompany him to his car. Victim testified that, when they arrived at Appellant's small four-door car, Victim opened the back door, the two got in the back seat, and Appellant shut the door behind him. They talked for a short time and then Appellant kissed Victim, first on the lips and then on the

_____

[3] Victim and Appellant were both high school students at the time of the sexual assault.

[4] The Commonwealth also charged Appellant with Rape. The jury acquitted him of this charge.

[5] Ms. Brownell's first name sometimes appears in the record as "Hallie" and sometimes as "Halle."

neck. Victim testified that, at first, she kissed Appellant back, but Victim knew immediately that she did not want to have sex because she was a virgin and felt uncomfortable.

Victim testified that while Appellant was kissing her, he got on top of her and inserted his finger in her vagina. She testified that Appellant was much bigger than her and weighed much more.[6] Victim explained that most of Appellant's body weight was on top of her body when he started to insert his fingers in her vagina. Victim testified that Appellant pulled her leggings and underwear down around her ankles and that everything happened quickly.

Victim further testified that after Appellant digitally penetrated her, he put his penis inside her vagina. Victim stated that it hurt right away because she had never had intercourse before, and she knew she didn't want to have intercourse with Appellant. Victim testified that she told Appellant "multiple times" that she did not want to have sexual intercourse with him; however, Appellant continued to have intercourse with her even after Victim protested by telling Appellant many times that she just wanted to go back to the party with her friends. N.T. Trial, 9/20/21, at 52.[7] Victim explained that, when she

_____

[6] Appellant was a 230-pound athlete and Victim weighed between 110 and 117 pounds, Appellant was between 6 feet and 6 feet 3 inches tall, and Victim was approximately 5 feet 4 inches tall.

[7] The lower court transmitted the notes of testimony from Appellant's trial in four separate volumes, three of which memorialize testimony from the first day of Appellant's trial. We have cited to Victim's testimony from the September 20, 2021 "Transcript of Proceedings of Jury Trial," which we
*(Footnote Continued Next Page)*

- 3 -

told him she didn't want to continue, Appellant got off her and grabbed her by her waist and put her on top of him. Victim testified that she was not willingly engaging in any way, but that Appellant had his hands on her, holding her waist and thrusting his body as his penis went inside her. Victim stated that eventually she sensed that Appellant was frustrated by her lack of interest in having intercourse with him and she was then able to push away from him. Victim testified that Appellant only spoke to her once during the assault to tell her that it would be fast. According to Victim, the assault lasted five to ten minutes.

Victim testified that she returned to the party, found her best friends Hallie Brownell and Leah Lomis,[8] and another girl, Kayla Pollack. The girls went to the bathroom where, Victim began to cry. Victim testified that when she sat on the toilet, she saw blood coming from her vagina. Victim told the girls she had had sex with Appellant against her will. As the girls exited the bathroom, they saw Appellant who said "maybe next time you'll know what you were doing." *Id.* at 60.

Victim further testified that, in addition to providing an oral statement to Detective Mancuso, she also gave a short, written statement to Officer

_____

received as a separate bound volume, and to Ms. Brownell's testimony from the September 20, 2021 "Transcript of Proceedings of Excerpt of Trial Testimony of Hall[i]e Brownell," which the lower court incorporated into the part of the certified record that contains the pleadings.

[8] Ms. Lomis died in a boating accident in 2017 and, therefore, did not testify at Appellant's trial.

Frank Rapoch containing some details about the assault. At sidebar, Appellant's counsel requested a copy of the written statement. The Commonwealth indicated that it did not have any written statement provided to Officer Rapoch by Victim. On cross-examination, Victim testified that she was given a blank document on which police asked her to write down a statement of what had happened, that she followed those instructions, that she gave Officer Rapoch the handwritten statement, and that she did not know what happened to it.

Kayla Pollack testified that when Victim returned to the party, she "looked completely soulless." N.T. Trial, 9/21/21, at 14. She testified that she accompanied Victim to the bathroom where Victim began crying and explaining that she had had nonconsensual sex with Appellant. Ms. Pollack confirmed that there had been blood coming from Victim's vagina.

Hallie Brownell testified that she also saw Victim when Victim returned to the party. She testified that Victim was "frantic," upset, and crying when she returned. N.T. Excerpt, 9/20/21, at 8. She testified that Victim asked Ms. Brownell to accompany her to the bathroom. She testified that Victim was bleeding from her vagina and that Victim stated that she had unwillingly had sex with Appellant. She testified that Victim explained that Appellant had ripped her leggings down and that Victim had repeatedly asked him to go back to the party, but he had refused. Ms. Brownell also testified that, when the girls left the bathroom, Appellant was outside and, stated "maybe next time

she'll know what she's doing," and commented about the blood on the seat of his car. *Id.* at 10.

On cross-examination, Appellant's counsel asked Ms. Brownell why she had had consensual sex with Appellant in the summer of 2017, which was **after** the assault of Victim. The Commonwealth objected to this question. At sidebar, Appellant's counsel argued that whether Ms. Brownell had ever had consensual sex with Appellant was relevant to Ms. Brownell's "credibility as to whether [the assault of Victim] ever happened . . . It is a straight credibility issue[.]" *Id.* at 14. Counsel further explained that "I will argue to the jury that that never happened. . . . And the fact that [Ms. Brownell] had voluntary relations with my client is direct credibility." *Id.*[9] Counsel emphasized his "position that it is the most monumental credibility if she did have consensual sex with him after finding out that allegedly [Appellant] raped her." *Id.* at 17-18.

The Commonwealth asserted that Ms. Brownell and Appellant had had consensual sex sometime **before** the assault on Victim and that "bringing in this teenage girl's sex life is not relevant to the charges at hand." *Id.* at 16. The trial court sustained the Commonwealth's objection and issued a cautionary instruction to the jury to disregard the question. *Id.* at 17-19.

---

[9] Counsel also stated that Appellant intended to testify that he and Ms. Brownell had sex in the summer of 2017. Appellant ultimately did not testify at trial.

Detective Mancuso, the lead investigator on the case, testified that during her interview of Victim, Detective Mancuso took notes and memorialized Victim's responses in a report. She testified that she did not provide Victim with a blank statement for Victim to complete. She further testified that never saw a written statement from Victim and that Officer Rapoch did not provide her with a statement from Victim.

Officer Rapoch testified that he did not have a written statement that Victim stated she had given him in 2018 and did not remember Victim giving him such a statement.

On September 21, 2021, the jury convicted Appellant of Aggravated Indecent Assault by Forcible Compulsion, Indecent Assault by Forcible Compulsion, and Sexual Assault.

On May 3, 2022, the court sentenced Appellant to an aggregate term of 5 ½ to 12 years' incarceration followed by 6 years of special probation. On May 13, 2022, Appellant filed a post-sentence motion in which he requested modification of his sentence. On May 19, 2022, the trial court denied the motion.

This appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

**A.**

Appellant raises the following issues on appeal:

1. Whether [Appellant] was denied his right to confront adverse witnesses, as guaranteed by the United States and Pennsylvania Constitution, when he was prohibited from

impeaching a key Commonwealth witness about her inconsistent and contradictory behavior which also calls into question her bias and hostility toward [Appellant?]

2. Whether the evidence was insufficient[] as a matter of law to sustain convictions for Aggravated Indecent Assault by Forcible Compulsion and Indecent Assault by Forcible Compulsion where the evidence failed to establish the key element of forcible compulsion[?]

3. If this Honorable Court determines sufficient evidence was presented to enable a fact-finder to find the key element of forcible compulsion, under Counts 2 and 4, whether the verdict was so against the weight of the evidence that the verdict shocks the conscious of one's sense of justice[?] Additionally, whether the verdict related to Count 3, Sexual Assault, was so against the weight of the evidence that the verdict shocks one's sense of justice[?]

4. Whether [Appellant's] Due Process Rights under **Brady**[] were violated because [Appellant] was unable to adequately impeach the alleged victim with her original written statement to law enforcement because the statement mysteriously went missing[?]

Appellant's Brief at 5-6.

**B.**

In his first issue, Appellant asserts that the trial court denied him his constitutional right to confront witness Hallie Brownell when it sustained the Commonwealth's objection to his counsel's question pertaining to Ms. Brownell's alleged subsequent sexual relationship with Appellant. *Id.* at 18-29. Appellant claims that the court should have permitted him to elicit testimony that Ms. Brownell had a sexual relationship with Appellant after he had allegedly assaulted her best friend, Victim, to "impeach her version of events based on her inconsistent and contradictory behavior." *Id.* at 21-22. Appellant avers that the trial court incorrectly assumed when sustaining the

Commonwealth's objection that Appellant's counsel's purpose was to impeach Ms. Brownell's character for truthfulness. *Id.* at 21. He explains instead that his counsel's actual purpose was to "show that Ms. Brownell's behavior was inconsistent with how a 'best friend' would normally act after a 'violent' assault." *Id.* at 23-24. He argues that it is clear from the Notes of Testimony that "this line of questioning was intended to impeach the veracity of [Ms. Brownell's] testimony based upon behavior which a reasonable person could call into question following a traumatic event." *Id.* at 27. Notwithstanding the above arguments, Appellant does not address the legal conclusion upon which the trial court based its evidentiary ruling.

Appellant also claims that, through his cross-examination, his counsel sought to reveal Ms. Brownell's bias or hostility toward Appellant or that she had a motive to lie. *Id.* at 23. In particular, Appellant asserts that if his counsel had been permitted to reveal that Ms. Brownell and Appellant had a consensual sexual relationship months after Appellant's assault of Victim, "the jury would have been made aware of a complex love triangle." *Id.* at 27. Appellant then avers that this testimony would have also revealed a "four-sided love square" between Appellant, Victim—with whom Appellant maintains his sexual relationship was consensual—Ms. Brownell, and Ms. Pollack, who admitted that Appellant had accompanied to her senior prom "a couple years" after Appellant's alleged sexual assault of Victim. *Id.* at 29. Appellant concludes that this "thorny relationship certainly suggests bias" and that "[c]learly, something other than the alleged violent sexual assault of their

close friend caused [the witnesses'] relationships with [Appellant] to spoil." *Id.* at 28-29 (emphasis omitted).

We review the trial court's rulings on the admissibility of evidence for an abuse of discretion. *Commonwealth v. Thompson*, 106 A.3d 742, 754 (Pa. Super. 2014). An abuse of discretion is "the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will, or partiality, as shown by the evidence of record." *Commonwealth v. Harris*, 884 A.2d 920, 924 (Pa. Super. 2005) (citation omitted).

"It is well-settled that the trial court has the discretion to determine the scope and limits of cross-examination and that this Court cannot reverse those findings absent a clear abuse of discretion or an error of law." *In re Lokuta*, 11 A.3d 427, 444 (Pa. 2011) (citation and quotation marks omitted). The right to confront witnesses "guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Commonwealth v. Rogers*, 250 A.3d 1209, 1216 (Pa. 2021) (citation and quotation marks omitted).

Before we reach the merits of Appellant's evidentiary challenge, we must determine whether he has preserved for our review the arguments he now asserts to his support his claim.

It is well-established that issues not raised before the trial court are waived and cannot be raised for the first time on appeal. Pa.R.A.P. 302(a). In order to preserve an evidentiary issue for review, "a party must make a timely

and specific objection." ***Commonwealth v. Duffy***, 832 A.2d 1132, 1136 (Pa. Super. 2003) (citation omitted). "Also, an appellant may not raise a new theory for an objection made at trial on his appeal." ***Id. See also Commonwealth v. Rose***, 172 A.3d 1121, 1128 (Pa. Super. 2017) (finding a challenge to the admission of certain testimony waived where counsel asserted a "bald objection without specificity" during trial); ***Commonwealth v. Lopez***, 57 A.3d 74, 82 (Pa. Super. 2012) (concluding that the appellant waived his claim that certain testimony was inadmissible hearsay where, at trial, appellant's counsel merely objected without explanation).

Our review of the Notes of Testimony indicates that Appellant's proffered reason for seeking Ms. Brownell's testimony that she had a sexual relationship with Appellant subsequent to his assault of Victim was that this "fact" presented a "monumental" challenge to her credibility.[10] Appellant's counsel never claimed, as Appellant argues in his Brief to this Court, that he sought to pursue this testimony to expose Ms. Brownell's bias against or motive to lie about Appellant, the existence of any so-called "love triangle" or "four-sided love square," or to "show that Ms. Brownell's conduct was inconsistent with how a 'best friend' would normally act after a 'violent' assault."[11] Accordingly, we conclude these new theories in support of his request for the admission of this evidence, raised for the first time on appeal, are waived.

---

[10] N.T. Excerpt, 9/20/21, at 17-18.

[11] Appellant's Brief at 23-24, 27, 29.

Moreover, even if Appellant had challenged the trial court's legal conclusion to exclude Ms. Brownell's testimony regarding her alleged subsequent sexual relationship with Appellant, it would not merit relief.

Generally, all relevant evidence is admissible, and evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence." Pa.R.E. 401(a). **See also id.** at 402. Here, any evidence of Ms. Brownell's subsequent relationship with Appellant was not relevant to whether Appellant committed the offenses against Victim.

Furthermore, to the extent Appellant sought Ms. Brownell's testimony to impeach her credibility as he claimed at trial, Pa.R.E. 608 precludes the use of specific instances of a witness's conduct to attack her character for truthfulness. **See** Pa.R.E. 608(b)(1) ("The character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic evidence concerning specific instances of the witness'[s] conduct[.]"). Rather, to challenge Ms. Brownell's credibility, the Rules of Evidence limited Appellant to introducing evidence of her general reputation for truthfulness or untruthfulness. **See id.** at 608(a) ("A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness."). Thus, the trial court did not abuse its discretion in precluding Appellant from cross-examining Ms. Brownell on this issue. **See** Trial Ct. Op., 10/19/22, at 9 (explaining that it precluded Appellant from cross-examining Ms. Brownell on her alleged sexual relationship with Appellant because Pa.R.E. 608 prohibited Appellant from

using specific instances of Ms. Brownell's conduct for this purpose). Appellant is, therefore, not entitled to relief on this claim.

## C.

In his next issue, Appellant claims that the Commonwealth's evidence was insufficient to prove the "forcible compulsion" element of Aggravated Indecent Assault by Forcible Compulsion and Indecent Assault by Forcible Compulsion. Appellant's Brief at 30. He asserts that the Commonwealth failed to show that he used any kind of force when digitally penetrating Victim. *Id.* at 32-33, 38.

"A claim challenging the sufficiency of the evidence is a question of law." ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000). We review a sufficiency challenge *de novo*, and our scope of review is limited to the evidence of record and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as verdict winner. ***Commonwealth v. Rushing***, 99 A.3d 416, 420-21 (Pa. 2014).

The evidence is sufficient if it can support every element of the crime charged beyond a reasonable doubt. ***Commonwealth v. Sebolka***, 205 A.3d 329, 337 (Pa. Super. 2019). The Commonwealth may sustain its burden by means of wholly circumstantial evidence. *Id.* "Significantly, we may not substitute our judgment for that of the factfinder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of [an appellant's] crimes beyond a

reasonable doubt, the appellant's convictions will be upheld." *Id.* (citation omitted).

"[T]he uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient" to sustain a conviction. *Commonwealth v. Diaz*, 152 A.3d 1040, 1047 (Pa. Super. 2016) (citation omitted). *See also* 18 Pa.C.S. § 3106 (explaining that the "testimony of a complainant need not be corroborated in prosecutions" for sexual offenses).

A person commits the offense of Aggravated Indecent Assault by Forcible compulsion if he "engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic[,] or law enforcement procedures . . . if . . . the person does so by forcible compulsion[.]" 18 Pa.C.S. § 3125(a)(2).

A person commits the offense of Indecent Assault by Forcible Compulsion if he "has indecent contact with the complainant [or] causes the complainant to have indecent contact with [him] . . . and . . . the person does so by forcible compulsion[.]" *Id.* at § 3126(a)(2).

The Crimes Code defines "forcible compulsion" as "[c]ompulsion by use of physical, intellectual, moral, emotional[,] or psychological force, either express or implied." *Id.* at § 3101.

Our review of the Notes of Testimony indicates that the Commonwealth presented sufficient evidence to prove each element of the charged offenses, including that Appellant used physical force in his commission of the assault

- 14 -

on Victim. Specifically, the Commonwealth presented evidence that Appellant overpowered Victim and ignored her protests when he penetrated her with his fingers and penis. The jury found credible Victim's testimony that Appellant climbed on top of her in the back of his car, pulled down her leggings and underwear and digitally penetrated her vagina, then grabbed her by the waist and put her on top of him and forced his penis into her vagina. Victim also testified that she experienced physical pain during the entire encounter, bled heavily as a result of it, and that she told Appellant multiple times that she wanted to return to the party. In addition, the jury was able to see that Appellant is significantly larger than Victim so as to credit Victim's testimony that Appellant ignored Victim's protestations and physically overcame her to force sexual assault.

From this evidence, and all reasonable inferences therefrom, it was reasonable for the jury to conclude that Appellant employed forcible compulsion to assault Victim. Appellant's challenge to the sufficiency of the evidence, thus, fails to garner relief.

**D.**

In his third issue, Appellant challenges the weight the jury gave to the Commonwealth's evidence in support of each of his convictions. Appellant's Brief at 38-50.

A challenge to the weight of the evidence must be raised before the trial court either orally or in written motion. Pa.R.Crim.P. 607.

The Rule provides:

Rule 607. Challenges to the Weight of the Evidence

(A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:

(1) orally, on the record, at any time before sentencing;

(2) by written motion at any time before sentencing; or

(3) in a post-sentence motion.

Pa.R.Crim.P. 607(A)(1)-(3). "As noted in the comment to Rule 607, 'the purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived.'" ***Commonwealth v. Gillard***, 850 A.2d 1273, 1277 (Pa. Super. 2004) (quoting Pa.R.Crim.P. 607 cmt.). An appellant's failure to avail himself of any of the prescribed methods for presenting a weight of the evidence issue to the trial court constitutes waiver of that claim, even if the trial court responds to the claim in its Rule 1925(a) opinion. ***Commonwealth v. Burkett***, 830 A.2d 1034, 1037 (Pa. Super. 2003).

Our review of the trial court record, including the Notes of Testimony and Appellant's post-sentence motion, indicates that Appellant did not raise his challenge to the weight of the evidence at any time at or before sentencing or in his post-sentence motion. Accordingly, Appellant has waived this claim.

**E.**

In his final issue, Appellant asserts that the Commonwealth violated his Due Process rights pursuant to ***Brady*** by failing to allow him to inspect the written statement Victim indicated she had provided to Officer Rapoch. Appellant's Brief at 50-54. Appellant concedes that Officer Rapoch testified

that he did not recall Victim giving him a written statement. *Id.* at 52. Appellant speculates that "the written statement likely contained important impeachment evidence pertaining to the intricacies of the alleged incident." *Id.* at 52. The Commonwealth responds that no such written statement exists. Commonwealth's Brief at 29 (citing N.T., 9/20/21, at 69).

In *Brady*, the U.S. Supreme Court held that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is **material** to either guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87 (emphasis added).

"[T]o establish a *Brady* violation, an appellant must prove three elements: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued." *Commonwealth v. Spotz*, 47 A.3d 63, 84 (Pa. 2012).

> The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense. [Rather, e]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Willis*, 46 A.3d 648, 656 (Pa. 2012) (citations, marks, and brackets omitted).

- 17 -

The defendant has the burden of proving, by reference to the record, that the Commonwealth withheld or suppressed evidence. ***Commonwealth v. Hutchinson***, 25 A.3d 277, 310 (Pa. 2011). "[A] prosecutor's disclosure obligation encompasses only information known or readily ascertainable by the government actors involved in the prosecution." ***Commonwealth v. Weiss***, 81 A.3d 767, 792 (Pa. 2013), *abrogated on other grounds by* ***Commonwealth v. Yale***, 249 A.3d 1001 (Pa. 2021).

Following our review, we conclude that Appellant has failed to demonstrate that the Commonwealth committed a ***Brady*** violation. Neither the prosecutor nor Appellant had access to Victim's alleged written statement.

In addition, the Commonwealth cannot be found to have suppressed a statement, either willfully or inadvertently, as the statement does not exist. Detective Mancuso testified that Officer Rapoch never provided her with a written statement from Victim, and Officer Rapoch testified that he did not remember obtaining a written statement from Victim and could not provide a copy of such a statement. ***See*** N.T., 5/21/21, at 23 (where Detective Mancuso testified that Officer Rapoch never provided her with a written statement from Victim), 41 (where Officer Rapoch testified that he does not remember obtaining a written statement from Victim).

Appellant's argument as to the value of a written statement that was not available to either his attorney or the prosecutor is pure speculation, particularly where he could not establish that the statement exists. As stated above, a mere possibility that an item of undisclosed information might have

- 18 -

been helpful to Appellant is not sufficient to establish materiality.  Accordingly, Appellant has not established that the Commonwealth violated his rights under **Brady**.  He is, thus, not entitled to relief on this claim.

## F.

For the foregoing reasons, we affirm Appellant's judgment of sentence.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/10/2023